JOHN F. FISHER & others *vs.* CITY OF HOLYOKE & others.

Hampden.     April 5, 1961. — June 6, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& CUTTER, JJ.

*Statute*, Acceptance.  *Holyoke.  Municipal Corporations,* Vote of aldermen, Municipal finance, Referendum.

The provisions of § 22 of the Holyoke charter, St. 1896, c. 438, dealing with orders of the board of aldermen "involving the appropriation or expenditure of money to an amount which may exceed" $200 are not

---

confined in their application to orders adopted in connection with the highway matters set forth in the first two sentences of § 22.    [672]

Under §§ 22 and 24 of the Holyoke charter, St. 1896, c. 438, an order adopted by the board of aldermen "involving the appropriation or expenditure of money to an amount which may exceed" $200 must be presented to the mayor for his approval.    [672–673]

A vote by the board of aldermen of Holyoke to accept G. L. c. 41, § 108D, fixing a minimum annual compensation for fire fighters, to put which in effect would result in cost exceeding $200, would be an order "involving the appropriation or expenditure of money to an amount which may exceed" $200 within § 22 of the city charter, St. 1896, c. 438.    [673]

Acceptance of G. L. c. 41, § 108D, by vote of the board of aldermen of Holyoke "subject to the provisions of the charter" was legislative action subject to the referendum provided for in Holyoke by its acceptance of St. 1953, c. 343, making G. L. c. 43, §§ 37–44, applicable therein and a part of its charter.    [673–674]

PETITION filed in the Superior Court on March 10, 1960. The case was heard by *Lurie,* J.

*Gerard L. Pellegrini,* for the petitioners.

*Leonard E. Gibbons,* Special Counsel, (*Maurice J. Ferriter,* City Solicitor, with him,) for the respondents.

WILKINS, C.J.    This petition for a writ of mandamus is brought by members of the regular fire department of the respondent city of Holyoke on behalf of the entire membership against the city, the mayor, the city auditor, and the city treasurer.    The purpose of the petition is to order the respondents to take action to carry out the provisions of St. 1958, c. 621, which is entitled, "An Act establishing a minimum annual compensation for fire fighters in certain cities and towns," and inserts § 108D in G. L. c. 41.    The case is reported without decision by a judge of the Superior Court upon the pleadings, agreed facts, and facts found by him for determination of the question whether, as matter of law, the writ ought to issue.

The principal question is whether the city has properly accepted St. 1958, c. 621, so as to make effective G. L. c. 41, § 108D: "Notwithstanding the provisions of any general or special law to the contrary, the minimum annual compensation of each permanent fire fighter in the fire department of any city or town . . . shall be not less than five thousand dollars.    This section shall become effective when

accepted in a city having a plan E charter by the affirmative vote of a majority of all the members of the city council, and, in the case of other cities by vote of the city council, subject to the provisions of the charter, and in a town by a majority vote at a town meeting.'' So far as it relates to cities, the second sentence is very similar to the second sentence of G. L. c. 41, § 108E, inserted by St. 1959, c. 228,[1] which was before us in *Oleksak* v. *Westfield, ante,* 50, 51.

The city charter is contained in St. 1896, c. 438, as amended. The legislative branch of the city consists of a board of aldermen of eleven members. St. 1953, c. 566 (accepted by voters on November 3, 1953). On May 5, 1959, an order was introduced without a prior reading and without the recommendation of the mayor at a duly constituted meeting of the board. It read: ''Ordered, that Chapter 621 of the Acts and Resolves of 1959 [*sic*], 'An Act establishing a minimum annual compensation for fire fighters in certain cities and towns,' be accepted by the board of aldermen, subject to the provisions of the charter.'' The vote was yeas 7 and nays 4. On May 7 the measure was presented to the mayor, who returned it to the board without his approval and with a message setting forth his reasons. On May 19 the board voted to override the veto, the vote being yeas 9 and nays 2. The action of the board was ruled to be an invalid acceptance of St. 1958, c. 621, by the law department of the city.

In *Oleksak* v. *Westfield, ante,* 50, where the only provisions of the charter relied upon concerned ordinances, we were not required to construe the phrase ''subject to the provisions of the charter'' (pages 51–52). In *Brucato* v. *Lawrence,* 338 Mass. 612, 617, effect was given to a similar provision in G. L. c. 31, § 47E, inserted by St. 1951, c. 537.[2] In the present case, however, we shall set forth pertinent provisions of the Holyoke charter to which the acceptance of § 108D was subject.

---

[1] Section 108E refers to ''an annual town meeting.''

[2] ''This section shall become effective . . . in the case of . . . cities by vote of the city council, subject to the provisions of the charter . . . .''

Section 22 (St. 1896, c. 438, § 22) provides in part: "Any ordinance, order, resolution or vote involving the appropriation or expenditure of money to an amount which may exceed two hundred dollars, shall require for its passage the affirmative votes of a majority of all the members of the board of aldermen. Every such ordinance, order, resolution or vote shall be read twice, with an interval of at least three days between the two readings, before being finally passed; . . . *provided, however,* that upon and after the written recommendation of the mayor the board of aldermen may pass such ordinance, order, resolution or vote on the same day by a two thirds yea and nay vote."

Preceding the two sentences of § 22 just quoted, there are two sentences which the petitioners contend show that the section "is limited to the matter of laying out, locating anew or discontinuing of streets and ways, along with the assessment of damages therefor and the payment of them." This contention we reject as untenable. Detailed discussion could serve no useful purpose.

Nor does it follow, as also contended by the petitioners, that § 22 as so construed would conflict with § 24 of the charter. The two provisions must, and can, be read together. As applicable to the case at bar § 24 (St. 1896, c. 438, § 24) provides: "Every ordinance, order, resolution or vote of the board of aldermen, except such as relates to its own internal affairs, to its own officers or employees, shall be presented to the mayor. If he approve thereof he shall signify his approval by signing the same, but if not he shall return the same with his objections to the board of aldermen, who shall enter the objections of the mayor, at length, upon its records, and proceed to reconsider said ordinance, order, resolution or vote, and if after such reconsideration two thirds of the board of aldermen, notwithstanding such objections, vote to pass the same, it shall be in force. In all cases the vote shall be taken by yeas and nays."

The result of reading the two sections together is that if an ordinance, order, resolution or vote involves the appro-

priation or expenditure of money to an amount which may exceed $200, it shall be presented to the mayor. These sections are somewhat repetitious but are not in conflict.

It is stipulated that no pertinent supplemental appropriation in excess of $200 was voted by the board of aldermen, but that if St. 1958, c. 621, was validly accepted, the cost of putting it in effect would exceed that amount. No contention is or could be made that, lacking two readings of the proposed order, there was compliance with § 22, if applicable. So a critical issue is whether there was an "ordinance, order, resolution or vote involving the appropriation or expenditure of money to an amount which may exceed two hundred dollars."

Our decision must be in the affirmative. While the vote neither appropriated nor expended any sum, its passage surely involved an appropriation or expenditure. The act is mandatory, and once accepted, an appropriation or expenditure of money would inevitably follow. *James* v. *Mayor of New Bedford,* 319 Mass. 74, 76–77. *Brucato* v. *Lawrence,* 338 Mass. 612, 618. *Oleksak* v. *Westfield, ante,* 50. Compare *Mayor of Holyoke* v. *Chief of Police of Holyoke,* 328 Mass. 253, 257. A contrary holding would be unconvincing. Our interpretation is aided by the words "may exceed" which indicate a possibility and not a certainty. If § 22 were confined to an actual appropriation or expenditure, the amount would be known. McQuillin, Municipal Corporations (3d ed.) §§ 39.60, 39.63. See Holyoke charter, St. 1896, c. 438, § 16.

We now consider a second attempt to accept the act. On November 4, 1959, there was introduced in the board of aldermen an order "that the board of aldermen and the mayor accept, subject to the provisions of the charter, chapter 621 of the Acts and Resolves of 1958. An Act establishing a minimum annual compensation for fire fighters in certain cities and towns." On November 17 the order passed a second reading and was presented to the mayor for his approval. On November 18, the mayor returned the order to the board without his approval and with

a message setting forth his reasons.   On December 1 the board passed the order over the veto.   Thereafter the action of the board was made the subject of a referendum petition.   G. L. c. 43, §§ 38, 42, as amended.   In a special election held on February 2, 1960, the vote was in the negative and against the acceptance of the act.

Statute 1953, c. 343, entitled, ''An Act providing for the initiative and referendum for the city of Holyoke,'' was accepted by the voters of the city on November 3, 1953. The provisions so accepted became a part of the Holyoke city charter.   *Gorman* v. *Peabody,* 312 Mass. 560, 566.   See *Troland* v. *Malden,* 332 Mass. 351, 354.   They fall within the phrase ''subject to the provisions of the charter'' contained in St. 1958, c. 621, which means all the provisions of the charter, and not just some of them.   General Laws c. 43, § 42 (as amended through St. 1935, c. 68, § 2), describes the referendum procedure upon ''the final passage of any measure, except a revenue loan order.''   By G. L. (Ter. Ed.) c. 43, § 37, '' 'measure' shall mean an ordinance, resolution, order or vote passed by a city council.''   In *Brucato* v. *Lawrence,* 338 Mass. 612, there was no referendum upon the council's vote of acceptance.

Contrary to the petitioners' contention the vote of the board of aldermen in the case at bar was legislative and not executive in nature.   *Quinlan* v. *Cambridge,* 320 Mass. 124, 126, and cases cited.

*Petition dismissed.*