JOHN F. O'SHEA & others *vs.* CITY OF HOLYOKE & others.[1]

Hampden.   November 8, 1962. — December 3, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Municipal Corporations*, Referendum.  *Statute*, Acceptance.

Where, within twenty days after passage of an order by the board of
aldermen of a city accepting G. L. c. 41, § 108E, inserted by St. 1959,
c. 228, establishing minimum police salaries, a referendum petition and
a certificate of the registrars of voters showing an adequate number of
signatures of registered voters to the petition were received by the city
clerk, who was also clerk of the board of aldermen, and on the same day
were physically brought to a meeting of the board, there was compliance
with the requirement of G. L. c. 43, § 42, as amended through St. 1935,
c. 68, § 2, that the duly signed petition be "presented to" the board
within such twenty days, although a quorum was lacking at such meet-
ing of the board, and there was compliance with the requirement of
c. 43, § 38, that the city clerk "forthwith transmit" the petition and the
certificate to the board.  [177–179]
A referendum upon a certain measure passed by the board of aldermen
of a city was not invalid for failure of the board to comply with the
requirement of G. L. c. 43, § 42, as amended through St. 1935, c. 68,
§ 2, that upon presentation to the board of a duly signed referendum
petition respecting a measure the board "immediately reconsider such
measure" where the board took no action on the measure in question
until about a month after presentation of the referendum petition and
then voted to call a special election on the measure without expressly
reconsidering it.  [179]

BILL IN EQUITY for declaratory relief filed in the Superior
Court on March 30, 1961.

The suit was reported without decision by *Tomasello, J.*,
upon the pleadings and an agreed statement of facts.

*David Burres* for the plaintiffs.

*Maurice J. Ferriter,* City Solicitor, for the defendants.

CUTTER, J.   On November 17, 1959, the board of alder-
men of Holyoke voted to pass an order by which Holyoke
purported to accept G. L. c. 41, § 108E, inserted by St. 1959,

---

[1] The mayor, city auditor, city treasurer, and city clerk.

c. 228 (providing minimum salaries for members of local police forces in communities accepting the section "by vote of the city council, subject to the provisions of the charter"). On November 25, 1959, the mayor "vetoed . . . [the] order." On December 1, 1959, the board by an eight to two vote, with one alderman absent, voted to pass the order over the mayor's veto. Thereafter, a group of citizens circulated a referendum petition (see G. L. c. 43, §§ 38, 42)[2] protesting the board's action, which was filed on December 15, 1959, with the city clerk. The city clerk on that day transmitted the petition to the board of registrars of voters, which on December 21, 1959, certified "the names of the registered voters on . . . [the] petition [to be] in excess of twelve per cent . . . of the registered voters of . . . Holyoke" and on December 21, 1959, transmitted to the city clerk's office the petition together with the certification.

The mayor requested the city clerk to call a special meeting of the board of aldermen for December 21 to act upon

---

[2] Section 42 (as amended through St. 1935, c. 68, § 2) reads, "If, within twenty days after the final passage of any measure . . . by the city council . . . a petition signed by registered voters of the city, equal in number to at least twelve per cent of the total number of registered voters [and addressed to the city council . . .] *is presented to the city council* . . . protesting against such measure . . . taking effect [is filed with the city clerk], the same shall . . . be suspended from taking effect; and the city council . . . shall immediately reconsider such measure . . . and if such measure . . . is not entirely rescinded, the city council shall submit the same . . . to a vote of the registered voters of the city . . . and such measure . . . shall forthwith become null and void unless a majority of the registered voters voting . . . vote in favor thereof. The petition . . . shall be termed a referendum petition and section thirty-eight shall apply to the procedure in respect thereto, except that the words 'measure . . . protested against' shall for this purpose be understood to replace 'measure' in said section wherever it may occur, and 'referendum' shall be understood to replace the word 'initiative' in said section." By St. 1961, c. 550, effective August 25, 1961, the words shown above in brackets were added and the words italicized above were omitted. Section 38 reads, "Signatures to initiative petitions need not be all on one paper. All such papers pertaining to any one measure . . . shall be filed in the office of the city clerk . . . . Within five days after the filing of said petition the registrars of voters shall ascertain by what number of registered voters the petition is signed, and what percentage that number is of the total number of registered voters, and shall attach thereto their certificate showing the result of such examination. The city clerk shall forthwith transmit the said certificate with the said petition to the city council . . . ." The term "city council" in §§ 38 and 42 refers "in a city which has no such body . . . [to] the board . . . having like powers or duties." G. L. c. 4, § 7 (definition of "aldermen," etc.). See *Kaeble* v. *Mayor of Chicopee,* 311 Mass. 260, 261; *Fisher* v. *Holyoke,* 342 Mass. 669, 671.

the petition. The minutes of that meeting stated that the president of the board "made note of the fact that the petitions protesting the establishment of the minimum compensation bills for the [p]olice and [f]irefighters were in the [c]hamber and on the desk of the [c]lerk of the [b]oard." A quorum was lacking both then and on December 29, the date to which "the [December 21] meeting was recessed." On December 30, to which the meeting again had been "recessed," the board took action on another matter but took no affirmative action on the referendum petition. On January 19, 1960, the board, purporting to act pursuant to G. L. c. 43, §§ 38–44, "voted to call a [s]pecial [e]lection . . . on the questions concerning minimum annual compensation for [p]olicemen." At this election a majority of the votes cast were against approval of the board's action in accepting St. 1959, c. 228.

The present bill[3] is brought by three present members and one retired member of the Holyoke police department for declaratory relief with respect to the proceedings already described, and for a determination whether G. L. c. 41, § 108E, was accepted by Holyoke as a consequence of any of these proceedings.

There was an "agreement as to all the material facts," including the fact that Holyoke has accepted St. 1953, c. 343, so that G. L. c. 43, §§ 37–44, inclusive, "became a part of the [c]harter of . . . Holyoke." See St. 1896, c. 438. The case was reported by a judge of the Superior Court without decision for our determination upon the pleadings and that agreement.

The plaintiffs contend that the provisions of G. L. c. 43, § 42 (see fn. 2, *supra*) were not satisfied in that (1) "the

---

[3] The original papers in *Monty* v. *Mayor of Holyoke*, 342 Mass. 781, show that persons purporting to be "members of the regular [p]olice [d]epartment and regular [f]ire department of . . . Holyoke" brought a bill ("in their individual capacities and on behalf of the entire membership" of such departments) for declaratory relief relating to the same votes of the board of aldermen and the same referendum vote of the registered voters as are here involved. In that case it was decided that Holyoke had not accepted St. 1958, c. 621, relating to minimum pay of members of the fire department. The members of the police department, who were plaintiffs in the *Monty* case, discontinued their proceedings prior to the arguments in that case. See *Fisher* v. *Holyoke*, 342 Mass. 669.

O'Shea *v.* Holyoke.

referendum petition was not presented to the [b]oard of [a]ldermen . . . within the required twenty days," and (2) the board "did not immediately, or at any time, reconsider its order accepting the provisions of . . . c. 41, § 108E." There is no merit in either contention.[4]

1. The physical presence of the referendum petition and of the registrars' certificate at the December 21 meeting of the board of aldermen was an adequate compliance with the requirement of G. L. c. 43, § 42 (as amended through St. 1935, c. 68, § 2) that a referendum petition "within twenty days after the final passage of any measure . . . [be] presented to the" board of aldermen. Nothing in the relevant statutes suggests that the absence of a quorum on December 21, 1959, prevented such a presentation.

Even if filing the uncertified petition with the city clerk did not constitute presentation of the petition to the city council (see *Carriere* v. *Board of Registrars of Voters of Fitchburg,* 257 Mass. 287), the city clerk's possession, in his capacity as clerk of the board, of both the referendum petition and the registrars' certificate satisfied the final provision of G. L. c. 43, § 38, prescribing that "[t]he city clerk shall forthwith transmit the . . . certificate with the . . . petition to the city council." We perceive no statutory basis for implying any further action as necessary to effect presentation of the petition.

In the *Carriere* case, 257 Mass. 287, 288, it was said that § 42 required that the initial filing with the city clerk be sufficiently early "to enable the registrars of voters to make the certificate required by § 38, so that the city clerk may present the petition and certificate to the city council 'within twenty days after the final passage of the measure.'" Even if we assume this conclusion to have been correct, the decision seems to proceed upon the assumption that presentation to the city council would be effected when the petition

---

[4] In view of our disposition of these contentions, we do not pause to consider certain other issues discussed in the briefs, such as laches and the effect of a stipulation in the earlier litigation (see fn. 3, *supra*) and of a release given to the city by some members of the police department at about the time of a pay increase effective January 1, 1961.

and the registrars' certificate were transmitted by the city clerk to the council.[5]

2.  We do not interpret the requirement of G. L. c. 43, § 42 (see fn. 2, *supra*), that "the city council . . . immediately reconsider such measure" as requiring council action at any precise time or in any specific manner.   The fair import of the provision is that, if the council within a reasonable time does not decide that the measure is to be "entirely rescinded," then the measure is to be submitted to the voters.   On January 19, 1960, without entirely rescinding the vote of December 1, 1959, the board of aldermen voted to call a special election.   This was adequate compliance with the relevant procedural requirements of G. L. c. 43, §§ 38 and 42.

3.  As the plaintiffs concede, the interpretation of §§ 38 and 42 for which they contend "would permit the very legislative bodies whose actions are . . . reviewable by . . . referendum . . . to avoid the [referendum] entirely; merely by failing to meet within twenty days or failing to reconsider an action already approved by . . . its membership, a . . . [c]ouncil could forestall a referendum."   That the plaintiffs' interpretation of these sections would thus tend to make the sections wholly ineffective is strong indication that this interpretation does not reflect the legislative intention.   See *Selectmen of Topsfield* v. *State Racing Commn.* 324 Mass. 309, 314.

The plaintiffs' contentions would probably not be advanced, were it not for the *Carriere* decision, 257 Mass. 287, which tended to frustrate the obvious legislative intention of the somewhat confusing language of §§ 38 and 42, to provide a simple, practicable method of obtaining municipal referenda.   We doubt whether the *Carriere* case would be followed today even upon its precise facts.   This, however,

---

[5] The 1961 amendments of § 42 (see fn. 2, *supra*), of course, have no application to these events in 1959 and early 1960.   There is nothing in the legislative history of the 1961 amendments (see 1961 House Doc. No. 618; 1961 Senate Doc. No. 651; 1961 Senate Journal, pp. 699, 1050, 1069, 1079; 1961 House Journal, pp. 1058, 1085, 1649, 1658) to indicate that the 1961 Legislature regarded the then existing provisions of § 42 as requiring more.

is probably an academic question in view of the 1961 legis-
lation (see fns. 2, 5, *supra*). In any event, the *Carriere*
case is not controlling upon these different facts. We are
not willing to extend its application.

4. The case is remanded to the Superior Court. A de-
cree is to be entered declaring that Holyoke did not by any
proceedings described in the record accept St. 1959, c. 228.
Costs are to be in the discretion of the Superior Court.

*So ordered.*