The Trustees of Tufts College *vs.* Volpe Construction Company, Inc.

Middlesex.    October 8, 1970. — December 8, 1970.

Present: Spalding, Cutter, Kirk, Spiegel, Reardon, & Quirico, JJ.

*Equity Jurisdiction*, Declaratory relief, Specific performance. *Contract*, Building contract, "Equal opportunity" clause. *Labor*. *Jurisdiction*, Federal field. *Equity Pleading and Practice*, Declaratory proceeding, Parties. *Moot Question*.

An actual, justiciable controversy within G. L. c. 231A, § 1, was stated in a bill for declaratory relief by a university containing allegations in substance that in an "equal opportunity" clause in a contract for construction of a dormitory for the plaintiff the defendant agreed not to discriminate against any employee or applicant for employment "because of race . . . color . . . or national origin" and to take "affirmative action to insure" employment "without regard" thereto, which would include, inter alia, recruitment or recruitment advertising, and selection for training, that if the defendant had complied with the terms of the contract the "number of Negroes and Puerto Ricans em-

ployed by the defendant for work on the Project would be approximately 20% of the total number of persons so employed," yet only four of the ninety persons employed on the project were Negroes and only two were Puerto Ricans, and that the defendant had on occasion supplied the plaintiff with "misleading and false" information respecting the defendant's compliance with the "equal opportunity" clause [337–338]; such clause did not require that the number of Negroes and Puerto Ricans employed by the defendant must constitute twenty per cent of its work force on the project or empower the plaintiff to impose a "quota" system on the defendant, but allegations of the bill raised the issue whether the defendant had taken the "affirmative action" required by the contract [340–341].

In a suit in equity by a university to secure a declaration and enforcement of its rights under an "equal opportunity" employment clause of a building contract between it and the defendant, it was held that there was no merit in contentions by the defendant that the plaintiff lacked "standing to maintain" the suit by reason of a provision of the contract respecting the imposition of Federal "sanctions" on the defendant by Federal authorities under an Executive Order in the event of noncompliance with the employment clause by the defendant [338–339]; that the plaintiff's "sole remedies" were the Federal "sanctions" [340]; and that the Secretary of Labor, who was not a party to the suit, was a "necessary" party thereto [340].

In a suit in equity by a university to secure a declaration and enforcement of its rights under an "equal opportunity" employment clause of a building contract between it and the defendant, a demurrer to the bill on the ground that the court did not have "jurisdiction over the subject matter of the . . . bill" because the remedies for unlawful discrimination provided by G. L. c. 151B were "exclusive" should have been overruled. [339–340]

Where it appeared in a suit in equity that the bill stated a case for a declaratory decree respecting a controversy between the parties about an "equal opportunity" employment clause in a contract between them for the construction of a building, that the bill alleged breaches of contract by the defendant which might entitle the plaintiff to damages, and that the plaintiff appealed from a final decree dismissing the bill after a demurrer thereto had been sustained, a motion in this court to dismiss the appeal on the ground of mootness in that the building had been fully completed was denied. [341]

BILL IN EQUITY filed in the Superior Court on November 3, 1969.

The suit was heard by *Spring*, J., on demurrer.

*Gordon L. Doerfer* for the plaintiff.

*Joseph L. Tauro* for the defendant.

SPIEGEL, J.  The plaintiff, an educational institution known as "Tufts University" (University) brought this bill

for declaratory relief in regard to a contract entered into with the defendant. The defendant's demurrer to the bill was sustained. The University appeals from an interlocutory decree sustaining the demurrer without leave to amend and from a final decree dismissing the bill.

We summarize the allegations of the bill. On or about August 7, 1968, the University entered into a contract with the defendant for the construction of a residence hall at Jackson College, which is part of the University. The contract included an Equal Opportunity clause in which the defendant agreed that it "will not discriminate against any employee or applicant for employment because of race . . . color . . . or national origin . . . [and that it] will take affirmative action to insure that applicants are employed and that employees are treated during employment without regard to their race . . . color . . . or national origin." The defendant employs a work force of about ninety persons on the project of which only four are "Negroes and only two . . . are Puerto Ricans. . . . Construction . . . began on August 9, 1968." The University is informed and believes that "a sufficient number of Negroes and Puerto Ricans live within the Greater Boston area such that, if the defendant had employed persons without regard to race, color, or national origin and had taken such affirmative action as was necessary to insure that persons were employed without regard to their race, color, or national origin, the number of Negroes and Puerto Ricans employed by the defendant for work on the Project would be approximately 20% of the total number of persons so employed."

"Under . . . the Equal Opportunity Clause the defendant is required to include . . . [substantially all of said clause] 'in every subcontract or purchase order unless exempted by rules, regulations or orders of the Secretary of Labor . . . so that such provisions will be binding upon each subcontractor or vendor.'" The total number of persons employed by subcontractors on the project is nineteen "of which none are Negroes or Puerto Ricans."

The University is informed and believes that "a sufficient

number of Negroes and Puerto Ricans live within the Greater Boston area, such that if the defendant' had enforced the obligation of all non-exempt subcontractors . . . and had taken such affirmative action as was necessary . . . the number of Negroes and Puerto Ricans so employed would be at least 20% of the total number of persons employed by said subcontractors."

"Under . . . the Equal Opportunity Clause the defendant agrees with the University to 'comply with all provisions of Executive Order No. 11246 of September 24, 1965, and of the rules, regulations and relevant orders of the Secretary of Labor.' The . . . [University] is informed and believes . . . that if the defendant had complied with said executive order and with said rules, regulations and orders . . . the number of Negroes and Puerto Ricans employed by [the] defendant on the project would be approximately 20% of the total number . . . employed."

The University is an applicant for "Federal Financial assistance" and is required as a condition for approval of such financial assistance to include   in "all construction contracts financed by such Federal assistance the Equal Opportunity Clause . . . and to enforce compliance where non-compliance is found to exist."

The University has requested the defendant to supply information and evidence from which it could be determined whether the defendant is complying with its obligation to the University under the Equal Opportunity clause.  "On occasion the information supplied to . . . [the University] in response to said request has been incomplete, misleading and false."

"An actual controversy . . . exists between the . . . [University] and defendant as to whether defendant has complied with its obligations under the Equal Opportunity Clause."

· Having thus summarized the bill, we deem it advisable to make some general observations pertinent to the case prior to a detailed consideration of the various grounds set forth in the demurrer.

This is a case of first impression in this Commonwealth. Apparently, neither of the parties has been able to cite a case in other jurisdictions, either State or Federal, directly in point. Indeed, our own research has not revealed one. However, there are cases in which there appears to be some analogy to the instant one.

In the case of *Weiner* v. *Cuyahoga Community College Dist.*, 19 Ohio St. 2d 35, the lowest bidder for a construction contract on a college campus was not awarded the contract because it failed to commit itself unequivocally to a program of affirmative action to hire minority group members. A taxpayer's action was brought to enjoin the college from awarding the contract to a contractor other than the lowest and best bidder. The court ruled that the college did not abuse its discretion in awarding the contract to one other then the lowest bidder. It noted that the contract need not be awarded to the lowest bidder but to the "lowest *and best* bidder" and "lowest *responsible* bidder." It said that "it might reasonably be supposed that the governmental objectives of equal employment opportunity and low-cost public construction would be better served by requiring public contractors to undertake affirmative duties in practicing nondiscrimination in their dealings with and through others in the performance of the contract," *Id.* at 38, and that the "state and federal governments" have a "strong moral commitment . . . to fair employment practices," *Id.* at 39. At the same time the court ruled that a "quota" system would be illegal as a "violation of the Civil Rights Act of 1964 (Section 2000e–2[j], Title 42, U. S. Code)," *Id.* at 39. The court implied that a contract remedy might be available in an appropriate case, but it did not address itself to the problem of determining what facts are sufficient to indicate a breach of an affirmative obligation. The dissenting opinion alluded to this problem but did not treat with it at any length, *Id.* at 41.

In the case of *Local 53 of the Intl. Assn. of Heat and Frost Insulators and Asbestos Wkrs.* v. *Vogler*, 407 F. 2d 1047 (5th Cir.), the court affirmed the decision of the District

Court ordering a labor union, which had admittedly discriminated against minority group members in the past, inter alia, to admit four individuals to membership and to refer nine others for work, and ordering "the development of objective membership criteria" and "alternating white and negro referrals [to jobs] until objective membership criteria are developed," *Id.* at 1051. That ruling, however, embodied an attempt by the court to eliminate the present effects of past discrimination which had clearly existed. In the case at bar there is no allegation of admittedly discriminatory policies, so the cases are readily distinguishable.

The same distinction is apparent between the case at bar and the case of *United States* v. *International Bhd. of Elec. Wkrs. Local No. 38,* 428 F. 2d 144 (6th Cir.). In that case the court remanded the cause to the District Court for appropriate affirmative relief against the present effects of an historic pattern of racial discrimination in the operations of the union. The court attributed significant weight to the fact that of 3,487 persons referred to prospective employers by the union in the year preceding the complaint, "only two were Negroes," *Id.* at 151.

In the case of *United States* v. *Sheet Metal Wkrs. Intl. Assn. Local Union No. 36, AFL–CIO,* 416 F. 2d 123 (8th Cir.), the court ruled, inter alia, that a union which had operated in a discriminatory fashion both before and after the Civil Rights Act of 1964 became effective could be required to publicize the fact that membership and related benefits had since been opened to all persons, *Id.* at 140. Again, however, the court was primarily concerned with remedying the continuing effects of active discriminatory practices followed by the union in the past.

We now discuss the grounds for the demurrer. The defendant assigns seven numbered grounds for its demurrer. However, three of them have subsections so that actually the defendant assigns what appear to be thirteen separate grounds.

We think it desirable to discuss grounds numbered 1,

2 and 3[1] jointly as the points involved overlap one another.

Obviously it is desirable, whenever possible, that a bill contain the precise allegations on which a binding declaration of the rights of the parties is sought. However, there are instances where it may not be possible to be that precise. The case at bar illustrates quite effectively that this is not always possible. Indeed, a case may state a precise set of facts in which a plaintiff may be entitled to a binding declaration as to his rights and yet not be granted further relief. See *Travers* v. *Grossman*, 352 Mass. 182, 185; *Travelers Ins. Co.* v. *Graye, ante,* 238, 240. In many decisions of this court we have stated that a demurrer cannot properly be sustained to a bill for declaratory relief on the ground that the court does not agree with the plaintiff's contention. See *Franklin Fair Assn. Inc.* v. *Secretary of the Commonwealth,* 347 Mass. 110, 113.

Of course, the mere assertion in a bill that an actual controversy exists is not sufficient. It is our belief, however, that the bill contains various allegations showing that an actual controversy does exist. The bill states that the defendant agreed under the contract not to discriminate against any employee or applicant for employment on the basis of race, color, or national origin; that it would take affirmative action toward that end which should include, inter alia, recruitment or recruitment advertising, and selection for training; that if the defendant had complied with the terms of the contract the "number of Negroes and Puerto Ricans employed by the defendant . . . would

---

[1] "1. The bill fails to state a claim upon which relief can be granted. 2. The bill fails to allege concisely and with substantial certainty facts sufficient to state a claim against the defendant. 3. The bill fails to allege a justiciable controversy within the purview of G. L. c. 231A, § 1, because a. it contains no allegation sufficient in law that the plaintiff has suffered or will suffer any harm as a result of the circumstances stated in the bill; b. it contains no allegation that the plaintiff has called upon the defendant to act and the defendant has refused or would refuse to act in remedy of any of the circumstances alleged by the plaintiff to exist; c. the plaintiff's allegation that it is 'required to pursue whatever legal remedies are available . . . [to] determine whether the defendant is complying with . . . the Equal Opportunity Clause and to enforce compliance' is erroneous in law."

be approximately 20% of the total number of persons so employed"; yet "only four persons [employed on the project] are Negroes and only two persons are Puerto Ricans"; and that the defendant has on occasion supplied the University with "misleading and false" information.

These assertions relate to alleged breaches by the defendant of its contract with the University. These statements are not mere conclusions of law, despite any argument which may be advanced by the defendant.

It seems to us, as we think the foregoing summary reveals, that the University has stated facts which show that "[a]n actual controversy has arisen" and that it is justiciable. Compare *Duane* v. *Quincy*, 350 Mass. 59, 61.

The fourth ground[2] alleges that the University "lacks standing to maintain . . . [the] bill." We disagree. The University and the defendant entered into a contract and the University is seeking a declaration as to its rights and duties under that contract in a situation where a controversy exists between the parties.

It seems clear from the bill that the University alleges, in effect, that it called upon "the defendant to act" and that the defendant furnished on occasion the University with information which was "incomplete, misleading and false."

The defendant asserts in its brief that as required by the Executive Order the following provision (paragraph 46, subparagraph 6) was included in the contract: "In the event of the Contractor's noncompliance with the Equal Opportunity conditions of this Contract or with any of such rules, regulations or orders, this Contract may be

---

[2] "4. The plaintiff lacks standing to maintain this bill, because a. it contains no allegation sufficient in law that the plaintiff has suffered or will suffer any harm as a result of the circumstances stated in the bill; b. it contains no allegation that the plaintiff has called upon the defendant to act and the defendant has refused or would refuse to act in remedy of any of the circumstances alleged by the plaintiff to exist; c. it is apparent on the face of this bill that the plaintiff brings it on behalf of persons whose rights the plaintiff has no legal authority to enforce; d. the plaintiff is not a proper party to enforce the laws, regulations or executive orders of the United States of America."

cancelled, terminated or suspended in whole or in part, and the Contractor may be declared ineligible for further Government contracts, in accordance with the procedures authorized in Executive Order No. 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in said Executive Order, or by rule, regulation or order of the Secretary of Labor, or as otherwise provided by law." It argues that the "sanctions contemplated" under the order "do not include a bill by the applicant (in this case . . . [the University]) to enforce or obtain compliance" and "that even if such a bill were otherwise available to the . . . [University], the parties here have contracted that the remedies available under [the] Order 11246 shall be the sole remedies."

Plainly it is to the defendant's advantage so to interpret the contract, and to argue that the "sanctions contemplated" do not include a bill for declaratory relief. This, however, is not necessarily so and it is not a conclusion which must be drawn from the foregoing provisions. Such a conclusion, it seems to us, ignores the right of the University to enforce the provisions of the contract between it and the defendant. Because the government may enforce a specific provision under the Executive Order does not mean that the University is unable to enforce a similar provision. In the instant case the University does not seek to enforce the terms of the Executive Order but seeks to enforce the provisions of its contract with the defendant. The fact that a specific provision in the contract is covered by a regulation of Federal agency regarding the enforcement of that regulation does not deprive the University of the right to enforce the contractual obligations.

In ground numbered 5 of the demurrer the defendant contends that the court does not have "jurisdiction over the subject matter of the . . . bill" because (a) the University's exclusive remedy is that provided by G. L. c. 151B, §§ 4, 5 and 9, and (b) that "The Enforcement of Compliance with Executive Order No. 11246 and the Rules and Regulations of the Secretary of Labor is Exclusively

within the Jurisdiction of Federal Courts and Federal Authorities."

Much of what we have stated in our previous comment is applicable to the latter point and does not require repetition. Regarding the first point the defendant maintains that the remedies provided under G. L. c. 151B "should be *exclusive*" because "complaints arising out of alleged discrimination in private employment were not actionable civilly or criminally prior to the enactment of G. L. c. 151B" (emphasis supplied). A brief answer to this contention is, as we have heretofore in substance stated, that the grievance of the University is based on an alleged breach of contract and the University is merely attempting to secure a declaration and enforcement of its rights under that contract.

The defendant's sixth ground of demurrer is that the University's "sole remedies . . . are those provided by paragraph 46, sub-paragraph 6 of the contract" (previously quoted). Our previous discussion regarding the Equal Opportunity clause covers this point and does not require further elaboration.

Ground numbered 7 states that "[t]here is an absence of necessary parties apparent upon the face of the . . . [University's] bill." The defendant maintains that the Secretary of Labor is a necessary party because he is "clearly the enforcing party as far as Executive Order 11246 is concerned." We reiterate that the University is not attempting to enforce the Executive Order but is merely seeking to enforce its contract with the defendant. We need not have before the court every person or group who conceivably might ultimately be affected by the outcome of this case. The particular controversy can be resolved by a declaration of the rights and duties of the University and of the defendant under the contract.

As part of an apparently concluding argument the defendant claims that the University is "demanding a quota" system. It appears to us that this argument disregards specific provisions of the contract. The contract requires the defendant to act in a nondiscriminatory manner and to

take "*affirmative action*" [3] (emphasis supplied) to insure that persons were employed "without regard to their race . . . color . . . or national origin." The allegations in the bill must be considered in their entirety. We do not hold that the number of "Negroes and Puerto Ricans" employed by the defendant must constitute twenty per cent of the defendant's work force on the project nor do we hold that the University has any right to impose a "quota" system on the defendant. We are of opinion, however, that the allegation that as few as six "Negroes and Puerto Ricans" are employed on the project out of a work force of ninety raises the issue whether the defendant has taken the affirmative action required of it under the contract with the University. See The Legality of the Philadelphia Plan, 4 U. of San Francisco L. Rev. 373, 379–380.

The defendant filed a motion to dismiss this appeal on the ground of mootness. In support thereof it filed an affidavit of its principal officer stating that the dormitory has been substantially completed. The University filed a counter affidavit stating certain "expenditures and diversions of administrative efforts . . . directly related to the controversy." Subsequently another affidavit was filed by the defendant stating that the building had been fully completed. Without a declaration of the rights of the parties the completion of the building would hardly terminate the controversy. For example, if it should be found that the defendant did commit a breach of the contract, the suit might be retained for the assessment of damages which the University may have suffered. For this reason alone the case is not moot and should be decided on the merits. See *County of Dukes County* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 333 Mass. 405, 410.

Accordingly, the motion to dismiss is denied. The interlocutory and final decrees are reversed. An interlocutory

---

[3] The contract provides, in part, that "[s]uch action shall include, but not be limited to, the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship."

decree is to be entered overruling the demurrer. The defendant is to have thirty days in which to file its answer. After the answer is filed the case is to be heard on the merits.

*So ordered.*