Alice Linda Benson & others *vs*. City of Lynn & others.

Essex. March 1, 1971. — May 3, 1971.

Present: Tauro, C.J., Spalding, Spiegel, Reardon, & Braucher, JJ.

*Municipal Corporations*, Referendum. *Lynn. Equity Jurisdiction*, Declaratory relief. *Equity Pleading and Practice*, Bill, Parties, Declaratory proceeding, Demurrer.

An alleged controversy of a city and city officials with persons who were "residents, registered voters and . . . taxable inhabitants" of the city as to the validity under the city charter of a referendum petition signed by such persons was sufficient under G. L. c. 231A, § 1, to support a suit in equity by such persons for declaratory relief in which the city, city officials, the city redevelopment authority, and the United States of America, Department of Housing and Urban Development, were parties defendant [413–414]; there was no nonjoinder of necessary parties under § 8, and no reason to refuse relief under § 3; and it was error to sustain a demurrer of the city and to dismiss the bill [414].

With respect to a referendum petition filed with the board of election commissioners of the city of Lynn in 1969, which the city and certain officials contended was a nullity because not filed with the city clerk as agent of the city council pursuant to the provision of § 54 of the city charter, Spec. St. 1917, c. 340, that a referendum petition should be "presented to the city council," it was held that St. 1931, c. 92, § 6, gave to the filing of a referendum petition with the board of election commissioners the same effect as a filing with the city council or the city clerk would have had before 1931. [415–416]

Bill in equity filed in the Superior Court on February 12, 1970.

The plaintiffs appealed from an interlocutory decree by *Hennessey*, J., sustaining a demurrer of the Lynn Redevelopment Authority, from an interlocutory decree by *Ponte*, J., sustaining a demurrer of the city of Lynn, and from a final decree by *Lappin*, J., dismissing the bill.

*Charles Ingram* (*Wilbur Cusack* with him) for the plaintiffs.

*John T. Ronan* (*Philip L. Sisk* with him) for Lynn Re-

development Authority; *William F. Weber,* City Solicitor, for the City of Lynn, also with him.

BRAUCHER, J.   The plaintiffs appeal from interlocutory and final decrees sustaining demurrers to their amended bill and dismissing it.   The plaintiffs are alleged to be "residents, registered voters, and more than 10 taxable inhabitants of Lynn," and "signers of the referendum petition hereinafter referred to," and "include those who endorsed and filed the same."   The amended bill seeks injunctive and declaratory relief against the city of Lynn and numerous officials of the city.   Apparently in response to a claim of nonjoinder of necessary parties, the Lynn Redevelopment Authority and the United States of America, Department of Housing and Urban Development, were added as parties defendant by leave of court, but no relief is sought against them.

The bill is replete with extraneous matter consisting of references to the plaintiffs' connection with an organization known as Citizens for a Better Lynn, of declamatory allegations about urban renewal and "a self-perpetuating bureaucracy," of what was common knowledge in Lynn, of conversations of one of the plaintiffs and counsel for the plaintiffs with the city solicitor and with other city officials, of motives and strategies imputed to city officials, and the like.   The plaintiffs' brief includes pages and pages of argument about "bureaucratic absolutism," "the Establishment," "the demand for equality of the negro," the danger of riots, a "corrupt class-stratified society," and the like; [1] it is supplemented by a four page bibliography on assorted subjects, and by copies of numerous polemical tracts.   The oral argument for the plaintiffs was an intemperate thirty minute discussion of questions not before the court, with a minimum of legal content, much of it apparently directed to spectators in the court room.

"A bill or petition may be so overloaded with such mat-

---

[1] The brief asserts: "A demurrer is a cruel weapon in the hands of the power elite . . . ."   It concludes: "We need only concern ourselves with short range solutions; because, if we fail, it will be the Eskimos, the Arapesh or the Zunis who will determine the future of mankind."

ter as to obscure the cause of action intended to be stated and to render the preparation of an answer unduly difficult, and so to call for the sustaining of a demurrer. . . . But in our opinion the petition in this instance does not call for such drastic treatment. The objectionable matter is readily separable. . . . It does not obscure the cause of action intended to be set forth, which is stated with clarity and reasonable conciseness. The objectionable matter could easily have been struck out on motion, if it had been thought worth while to file such a motion. It can now be treated as mere surplusage to which no attention will be paid." *Sears* v. *Treasurer & Recr. Gen.* 327 Mass. 310, 314.

Stripped of surplusage, the bill alleges the following. On December 9, 1969, the Lynn city council finally passed the "Lynnway-Summer urban renewal bond order" attached to the bill. The Lynn city hall was closed on Saturday, December 13, 1969, under G. L. c. 41, § 110A. On Monday, December 15, 1969, a notice of intention to file a referendum petition was filed with the board of election commissioners (the board) and with the city clerk, signed by 100 registered voters, and the signatures were duly certified. On December 29, 1969, a referendum petition protesting against the bond order was filed with the board, and on January 13, 1970, the board certified 7,844 of the signatures on the petition, 995 more than required by the city charter. A controversy has arisen as to the validity of the referendum petition, the plaintiffs contending that it is valid under the city charter and the defendants contending that it is a nullity because not filed with the city clerk as agent of the city council. The plaintiffs prayed that an injunction issue enjoining various actions to carry out the bond order, except subject to a referendum, and directing that approval of the bond order be placed on the ballot at a municipal election, and that the court make a binding declaration of the rights of the parties.

1. The controversy thus stated is an appropriate one for declaratory relief under G. L. c. 231A, § 1. *Morra* v. *City Clerk of New Bedford*, 340 Mass. 240. *O'Shea* v. *Holyoke*,

345 Mass. 175. *Lafleur* v. *Chicopee,* 352 Mass. 746.
*Scalley* v. *Registrars of Voters of Woburn,* 358 Mass. 815.
The plaintiffs as residents, registered voters and taxpayers
of the city and as signers of the referendum petition were
proper parties to assert the validity of the referendum peti-
tion. *Sharpe* v. *Registrars of Voters of Northampton,*
342 Mass. 620, 621, and cases cited. We need not consider
whether the plaintiffs, as "not less than ten taxable in-
habitants" of the city, have also stated a case under
G. L. c. 40, § 53, to restrain the marketing of bonds before
the referendum has been held. Compare *Povey* v. *School
Comm. of Medford,* 333 Mass. 70, 72, with *Ayer* v. *Commis-
sioner of Admn.* 340 Mass. 586, 587–588; *Woods* v. *Newton,*
349 Mass. 373, 378–379.

2. There is no nonjoinder of necessary parties. The
plaintiffs do not complain of the sustaining of the demurrer
of the Lynn Redevelopment Authority, except as it affects
other defendants. The record shows nothing as to the
United States of America, Department of Housing and
Urban Development, after the allowance of the plaintiffs'
motion that it be made a party defendant and that an order
of notice issue to bring it before the court. Notwithstand-
ing G. L. c. 231A, § 8, we "need not have before the court
every person or group who conceivably might ultimately be
affected by the outcome of this case." *Trustees of Tufts
College* v. *Volpe Constr. Co. Inc.* 358 Mass. 331, 340. The
particular controversy can be resolved by a declaration of
the rights and duties of the plaintiffs and the city and its
officials under the city charter. Declaratory relief, there-
fore, need not be refused under G. L. c. 231A, § 3.

3. Thus it was error to sustain the demurrer of the city
and to dismiss the bill. If the referendum petition is a
nullity, the court should so declare. "In many decisions
of this court we have stated that a demurrer cannot properly
be sustained to a bill for declaratory relief on the ground
that the court does not agree with the plaintiff's conten-
tion." *Trustees of Tufts College* v. *Volpe Constr. Co. Inc.*
358 Mass. 331, 337.

4. Under the Lynn city charter, Spec. St. 1917, c. 340, § 54,[2] a referendum petition is to be "presented to the city council." The act establishing a board of election commissioners for the city, St. 1931, c. 92, § 6,[3] vests in that board all the "powers, rights, privileges, liabilities and duties relating to . . . elections by law vested in and imposed upon the . . . city council or . . . the city clerk . . . [with exceptions not relevant]." In our opinion the 1931 statute gives to the filing of a referendum petition with the board the same effect a filing with the city council or the city clerk would have had before 1931. Thus some of the problems which arose under the somewhat similar provisions of G. L. c. 43, § 42, cannot arise under the Lynn city charter. See *Carriere* v. *Registrars of Voters*

---

[2] "Section 54. If within five days after the final passage of any measure, except an emergency measure, by the city council or the school committee, a notice of intention to file a referendum petition, as hereinafter provided, signed by not less than one hundred registered voters is filed with the city clerk, and if, within twenty days after the final passage of any such measure, a petition signed by registered voters of the city, equal in number to at least fifteen per cent of the total number of registered voters, including any who have signed the original petition only, be presented to the city council or to the school committee, as the case may be, protesting against such measure or any part thereof, the operation thereof shall thereupon be suspended; and the city council or the school committee, as the case may be, shall immediately reconsider such measure or part thereof; and if such measure or part thereof be not entirely annulled, repealed or rescinded, or the part objected to eliminated by amendment, the city council shall submit the same by the method herein provided, to a vote of the qualified voters of the city, either at the next regular city election, or at a special election which may, in its discretion, be called for the purpose, and such measure or part thereof shall forthwith become null and void unless a majority of the qualified voters voting on the same at such election shall vote in favor thereof, and unless it receives the affirmative vote of at least a third of the whole number of registered voters. The petition provided for by this section shall be termed a referendum petition. The procedure in respect to the referendum petition shall be the same, so far as it may be applicable, as that provided by the foregoing sections relating to initiative petitions, except that the words 'measure or part thereof protested against' shall for this purpose be understood to replace the word 'measure' wherever it may occur in said section, and that the word 'referendum' shall be understood to replace the word 'initiative' in said sections."

[3] "Section 6. All the powers, rights, privileges, liabilities and duties relating to primaries, caucuses or elections by law vested in and imposed upon the mayor and city council or either of them, the city clerk, the city solicitor or the board of registrars of voters in cities, except the power and duty of giving notice of elections and fixing the days and hours of holding the same, shall in the city of Lynn be vested in and performed by the board, who shall be subject to all the penalties prescribed by general laws for failure to perform the said duties."

*of Fitchburg,* 257 Mass. 287; *O'Shea* v. *Holyoke,* 345 Mass. 175; St. 1961, c. 550. On the allegations of the bill, therefore, we cannot direct the entry of a decree declaring that the referendum petition is a nullity. Before the petition can be declared valid the defendants are entitled to an opportunity to answer and to trial of any questions of fact presented.

5. The interlocutory decree sustaining the demurrer of the Lynn Redevelopment Authority is affirmed. The interlocutory decree sustaining the demurrer of the city of Lynn and the final decree are reversed. The case is remanded to the Superior Court. An interlocutory decree is to be entered overruling the demurrer of the city of Lynn. The defendants are to have thirty days in which to file their answers. After the answers are filed the case is to be heard on the merits.

*So ordered.*