Doerfer, J.
Plaintiff, Kelley Marine Transport Corporation (Kelley Marine), brings this action against the defendants, Boston Sand & Gravel Co. (BS&G), and the Massachusetts Water Resources Authority (MWRA), claiming contractual and tortious injuries resulting from the Boston Harbor Project-Deer Island related facilities (Deer Island project). The causes of action arise out of a contract between the MWRA and BS&G in which Kelley Marine alleges it was wrongfully prevented from becoming a subcontractor of the Deer Island project.
As against the MWRA, Kelley Marine seeks declaratory judgment that the MWRA had a legal duty to enforce affirmative action “set asides” for Women Business Enterprises (WBE), (Count VIII). Under Count IX, Kelley Marine contends that it was a third-party beneficiary of the contract between the MWRA and BS&G and that “by failing to perform its obligation to oversee and enforce compliance by BS&G with the ‘set aside’ requirements the MWRA breached its obligations.” Count X alleges that the MWRA’s “failure to oversee and enforce the ‘set aside’ requirements, the MWRA denied Kelley Marine its rights to make and enforce contracts ...” in violation of the Massachusetts Equal Rights Act, G.L.c. 93, §102. Under Count XI, Kelley Marine contends that the MWRA intentionally interfered with Kelley Marine’s contractual relationships by refusing to enforce the “set aside” requirements and by refusing to enforce the Letter of Intent from Kelley Marine submitted as part of BS&G’s bid on the contract. Under Count XII, Kelley Marine asserts that the MWRA’s knowing and intentional failure to enforce compliance with the “set aside” requirements amounts to an interference with advantageous business relationships on the part of the MWRA. Finally, Count XIII alleges that the MWRA was negligent in failing to adopt measures to ensure that its agents, servants and employees were complying with the provisions of the WBE program.
In Kelley Marine’s amended complaint, it contends that the MWRA failed in its responsibility to enforce compliance with state affirmative regulations. (See Introduction to Amended Complaint.) Specifically, Paragraph 8 of Kelley Marine’s complaint cites to the “set aside” provisions in G.L.c. 7, §40N. The MWRA contends that the “set aside” requirements of G.L.c. 7, §40N, do not apply to the MWRA and moves for summary judgment on Counts VIII-XIII pursuant to Mass.R.Civ.P. 56. For the following reasons, the MWRA’s motion for summary judgment is allowed.
BACKGROUND
On April 10, 1990, BS&G contracted with the MWRA to furnish all goods, supplies, materials, and equipment required for the supply and delivery of concrete to the Deer Island construction site. (Janice Brady Afft., ¶3.) The contract’s Supplemental Provisions for Affirmative Action required BS&G to submit a Letter of Intent (LOI) executed by each Minority Business Enterprise (MBE) and WBE with whom BS&G intended on subcontracting work. These LOI’s informed the MWRA that BS&G had the ability to comply with the MBE and WBE requirements of the Contract’s Supplemental Provisions. Id. at ¶5. When completed, the LOI became part of the contract and could only be modified with the MWRA’s approval. The Supplemental Provisions express goals for the subcontract work by MBE and WBE as a percentage of the total contract *546 price. The goals in the contract were set at 10% for MBE and 5% for WBE.
On March 10, 1990, BS&G submitted a LOI from Kelley Marine. The LOI expressed that Kelley Marine would supply barge transportation to Deer Island for $885,157. On July 15, 1992, BS&G sought authorization from the MWRA to terminate negotiations with Kelley Marine. BS&G informed the MWRA that a larger barge was needed for the job and that Kelley Marine could not meet the requirements to tow this larger barge. On July 30, 1992, the MWRA agreed to allow BS&G to terminate negotiations with Kelley Marine.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc. 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass. at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). The general rule of statutory construction is that where the language of the statute is plain it must be interpreted in accordance with the usual and natural meaning of the words. Commissioner of Revenue v. Amiwoodbroke, Inc., 418 Mass. 92, 94 (1994).
All of Kelley Marine’s counts against the MWRA axe based upon its failure to enforce state affirmative action regulations pursuant to G.L.c. 7, §40N. (Paragraph 8 of Kelley Marine’s complaint.) General Laws, c. 7, §40N has “set aside” provisions for MBE and WBE. The MWRA contends that G.L c. 7,§40N is not applicable.
General Laws, c. 7, §40N states in relevant part:
[t]he Commissioner, with the cooperation and approval of the state office of minority business assistance (SOMBA) . . . shall, at the beginning of each year, establish a specific annual dollar value of contracting and subcontracting work on capital facility projects subject to the supervision and control of the division of capital planning and operations which shall be reserved for minority-owned businesses and woman-owned businesses. (Emphasis added.)
The statute then goes on to establish the amounts to be set aside for MBE and WBE. Id. A reading of the statute reveals that the Deputy Commissioner of Administration reserves five percent of each capital facility project for certified WBEs. Sturdy v. State Office of Minority & Woman Business Assistance, 409 Mass. 587, 588 (1991).
As the statute expresses, in order for G.L.c. 7, §40N to apply to a capital facility project, the project must be subject to the supervision and control of the Division of Capital Planning and Operations (DCPO). G.L.c. 7, §40N. General Laws, c. 7, §40A establishes the jurisdiction of the DCPO. The statute states in relevant part that:
The [DCPO] shall exercise jurisdiction over capital facility projects to the extent provided below:
(1) Control and supervision of all building projects undertaken by any state agency . . .
(2) Oversight as to building projects undertaken by any building authority . . .
(3) For housing projects within the jurisdiction of the Department of Community Affairs . . .
(4) For all capital facility projects of cities and towns for which specific approval or authorization by the general court or a state agency is otherwise required and for all other public agencies not included within the scope of paragraphs (1), (2), and (3), establishment of requirements for record keeping and reporting by the administering agency as to control and supervision of capital facility projects, so that the division of capital planning and operations may assess the nature, scope and programs of all planned or current capital facility projects and fulfill its responsibilities as defined by this chapter and other relevant statutes . . . (Emphasis added.)
General Laws, c. 7, §39A(v) defines a “public agency” as a “department, agency, board, commission, authority, or other instrumentality of the Commonwealth . . .” (Emphasis added.) “State agency” is defined as “a state agency, board, bureau, department, division, section, or commission of the Commonwealth or county, . . .’’ G.L.c. 7, §39A(v).
In order for the “set-aside” requirements of G.L.c. 7, §40N to apply to the MWRA, the DCPO must have “supervision and control” over the capital facility project. Under G.L.c. 7, §40A, the DCPO only has “control and supervision” over building projects undertaken by *547 any “state agency.” G.L.c. 7, §40A(1). Under G.L.c. 7, §39A(v), the MWRA does not fall under the definition of “state agency.” The MWRA is an “authority” and therefore, falls under the definition of “public agency,” which.includes “authorities.” G.L.c. 7, §39A(v). Since the MWRA is not a “state agency” for purposes of G.L.c. 7, §40A, the DCPO does not have “supervision and control” over the MWRA or the Deer Island project. Accordingly, the MWRA is not required to comply or enforce the “set aside” requirements of G.L.c. 7, §40N because the Deer Island project is not subject to the supervision and control of the DCPO operations. See JJ Associates, Inc. v. Fall River Housing Authority, 19 Mass.App.Ct. 45, 53 (1984) (affirmative action provisions of G.L.c. 7, §§39A-43I could not be mandatorily applied to local housing authorities who were not “state agencies”).
Examining the other areas in which the DCPO has jurisdiction, it is quite evident from the language of G.L.c. 7, §40A that the DCPO does not have supervision and control over the MWRA. Under G.L.c. 7, §40A(2), the DCPO has jurisdiction to “oversee” building projects by any building authority. General Laws, c. 7, §39A(e) defines a building authority as “the University of Massachusetts Building Authority” and other state college building authorities. Clearly the MWRA does not fall under the definition of building authority and even if it did, the DCPO’s jurisdiction is limited to overseeing projects, not control and supervision.
Under G.L.c. 7, §40A(3), the DCPO has jurisdiction over housing projects within the jurisdiction of the Department of Community Affairs. Clearly, the Deer Island project is not a “housing project” and the subsection is inapplicable to the MWRA.
Under G.L.c. 7, §39A(4), the DCPO has limited jurisdiction over public agencies to establish the requirements for record-keeping and reporting as to the control and supervision of capital facility projects. The purpose of this limited jurisdiction by the DCPO is to “assess the nature, scope and programs of all planned or current capital facility projects to fulfill the DCPO’s responsibilities.” Accordingly, the DCPO only has limited jurisdiction to supervise and control capital facility projects. Such supervision and control may only be exercised when any state agency undertakes a building project. Since the MWRA is not a state agency for purposes of G.L.c. 7, §40N, the DCPO cannot control or supervise the Deer Island project. The set aside requirements of c. 7, §40N only apply to capital facility projects subject to the supervision and control of the DCPO. The set aside requirements of G.L.c. 7, §40N are inapplicable to the MWRA.
Kelley Marine’s attempt to incorporate the “set aside” requirements of G.L.c 7, §40N into G.L.c. 92 App. §1-8 also must fail. General Laws, c. 92 App. §1-8 states in relevant part that:
. . . The Authority shall develop policies and programs for affirmative action in employment, procurement and contracting in accordance with law and consistent with general policies and programs of the Commonwealth.
The Authority shall also appoint a special assistant for affirmative action and compliance and provide appropriate support staff. The special assistant shall report directly to the chairman of the Authority and shall develop, supervise, monitor and provide for the enforcement of affirmative action plans for employment, procurement and contracting activities of the Authority . . .
Although G.L.c. 92 App. §§1-8 requires the MWRA to develop and institute affirmative action plans, the language of the statute in no way infers that the MWRA must adopt the provisions of G.L.c. 7, §40N. The language of G.L.c. 7, §40N is specifically directed at certain projects. The court finds that the affirmative action programs the MWRA may be required to develop does not require adopting G.L.c. 7, §40N.
Kelley Marine’s complaint points this court to no other source other than G.L.c. 7, §40N for forced “set aside” compliance. In Kelley Marine’s Memorandum in Opposition of this motion, however, it argues that even if G.L.c. 7, §40N does not apply, the MWRA is still required to enforce the “set aside” requirements located within the Supplemental Provisions of the contract between BS&G and the MWRA.
Can Kelley Marine bring suit against the MWRA to enforce the terms of the contract between BS&G and the MWRA?
Kelley Marine is arguing, in essence, that as a third-party beneficiary of the BS&G-MWRA contract, it has a right to enforce the provisions of the contract which confers a benefit to Kelley Marine as a WBE. In Massachusetts, the promisee may bring suit to enforce affirmative action provisions of a contract against the promisor who is not in compliance with the contract’s provisions. See Trustees of Tufts College v. Volpe Construction Co., Inc., 358 Mass. 331, 339 (1970) (where terms of a contract require the promisor to comply with affirmative action provisions within the contract, the promisee may sue the promisor to enforce compliance with said provisions). In the case at bar, however, Kelley Marine, as a third-party beneficiary, is attempting to bring suit against the promisee, the MWRA, for failing to enforce the contract’s affirmative action provisions against the promisor, BS&G. Assuming that Kelley Marine is a third-party beneficiary of the MWRA-BS&G contract, Kelley Marine’s argument still fails.
Under third-party beneficiary law, a promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty. Flattery v. Gregory, 397 Mass. 143, 147 (1986). Unless otherwise agreed *548 between the promisor and the promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee owed to the third party (a creditor beneficiaiy): or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance (a donee beneficiary). Rae v. Air-Speed, Inc., 386 Mass. 187, 194 (1982), citing Restatement (Second) of Contracts, §302, Comment b (1981).
In the case at bar, there is no evidence that the Supplemental Provisions were included in the contract to satisfy an obligation that the MWRA owed Kelley Marine. The affirmative action provisions are general “set aside” requirements that do not mention specifically Kelley Marine. Accordingly, Kelley Marine is at best a donee beneficiaiy. See United States v. Morley Const. Co., 98 F.2d 781, 788 (2d Cir. 1938) (laborers were donee beneficiaries of terms contained within a governmental contract requiring the promisor to pay laborers the prevailing wage).
Restatement (Second) of Contracts, §310 states in relevant part:
§310. Remedies of the Beneficiary of a Promise to Pay the Promisee’s Debt; . . .
(1) Where an intended beneficiary has an enforceable claim against the promisee, he can obtain a judgment or judgments against either the prom-isee or the promisor or both based on their respective duties to him . . .
Under Restatement (Second) of Contracts, §310, Kelley Marine would have a cause of action against the MWRA if Kelley Marine had an enforceable claim against the MWRA on an underlying obligation. Since Kelley Marine is not a creditor beneficiary, its only recourse for BS&G’s alleged failure to comply with the set aside requirements within the contract is against BS&G. A donor beneficiary may not sue the promisee when the promisor fails to perform under the contract. John D. Calamari & Joseph M. Perillo, Contracts, §17-13 (3d ed. 1987). Kelley Marine has no cause of action against the MWRA based on BS&G’s failure to comply with the terms of the contract.
ORDER
For the foregoing reasons, is hereby ORDERED that the Massachusetts Water Resources Authority’s motion for summary judgment on counts VIII-XIII is ALLOWED.