542           61 Mass. App. Ct. 542 (2004)

Better Boating Association, Inc. *v.* BMG Chart Products, Inc.; Maptech, Inc.

BETTER BOATING ASSOCIATION, INC., & others[1] *vs.* BMG CHART PRODUCTS, INC., & others[2]; MAPTECH, INC., third-party defendant.

No. 02-P-1569.

Suffolk. January 14, 2004. - July 23, 2004.

Present: PERRETTA, KAPLAN, & SMITH, JJ.

*Collateral Estoppel. Partnership,* Agreement, Withdrawal of partner.

In an action for breach of contract, breach of an implied covenant of good faith and fair dealing, breach of fiduciary duty, intentional interference with contractual relations, and violation of G. L. c. 93A, § 11, the judge properly granted summary judgment in favor of the plaintiffs and the third-party defendant on the ground that a Federal court's ruling on the issue whether the defendants' actions constituted a withdrawal from a partnership that the defendants had previously formed with the plaintiffs precluded relitigation of the issue in the present action, where Federal law governed the question of issue preclusion, and where there was identity between the issue presented in the Federal action and in this action, the issue was essential to the determination on the merits, the parties had actually litigated the issue, and the decision on the issue was final. [548-553]

CIVIL ACTION commenced in the Superior Court Department on July 14, 1997.

The case was heard by *Herman J. Smith, Jr.,* J., on motions for summary judgment, and entry of final judgment was ordered by *Janet L. Sanders,* J.

*Thomas J. Ready,* of California (*Amanda P. O'Reilly* with him) for BMG Chart Products, Inc., & others.

*Mark E. Haddad* for Maptech, Inc.

*Peter A. Biagetti* for the plaintiffs.

KAPLAN, J. This opinion ends with an application of the

---

[1]James W. Sewall Company and BSB Electronic Charts LLP.

[2]Blue Marble Geographics, Inc.; PinPoint Systems International LLC; Blue Marble Group, Inc.; and Eva M. and Jeffrey B. Cole.

61 Mass. App. Ct. 542 (2004)                                        543

Better Boating Association, Inc. *v.* BMG Chart Products, Inc.; Maptech, Inc.

Federal law of res judicata. It begins with an agreement of August 24, 1994, by which three corporations — Better Boating Association, Inc. (BBA), James W. Sewall Company (Sewall), and Blue Marble Geographics, Inc. (BMG) — formed a partnership named BSB Electronic Charts LLP (BSB) to engage in manufacturing and distributing a digital computerized database of nautical charts. The partnership agreement, to be governed by the "substantive laws" of Massachusetts, described the intended roles of the partners in the enterprise: BBA was assigned marketing and promotion, Sewall was designated for cartography production, and BMG was charged with software development. The latter company was closely held; all its shares were in the name of Eva Cole; the head of the business was Jeffrey Cole. Jeffrey had had large experience in the development and licensing sides of navigational software.

After something less than a year's operation of the BSB partnership, Jeffrey decided to sell BMG's partnership interest in BSB to PinPoint Systems International LLC (PinPoint), also a software developer, and on May 10, 1995, BMG — by Jeffrey — and PinPoint entered into a letter of intent to such effect. The BSB partnership agreement, however, provided as follows with respect to a partner's transfer of its interest to an outsider: "No Partner shall, without consent of the other Partners . . . [p]ledge or transfer in any manner his interest in the Partnership except to another Partner or Partners as agreed upon by the other Partners." Jeffrey, on May 22, 1995, wrote to James M. Owen, president of BBA, advising Owen that BMG had signed the letter of intent with PinPoint, and asking for the consent of BBA and Sewall; "Of course," Jeffrey wrote, "the transfer of ownership interest must be approved by Better Boating and Sewall." The letter stressed PinPoint's high qualities and suggested Jeffrey was leaving the business for personal reasons of wanting more time with Eva and their small children. Owen wasted little time in faxing Jeffrey on May 31, 1995, that, by reference to the partnership agreement, "You are not allowed to transfer your interest to a third party or entity, period."

BMG's response to the turndown was as follows. On June 5, 1995, BMG caused its name to be changed to BMG Chart Products, Inc. (BMG Chart). On June 20, 1995, BMG Chart

transferred its assets — except for its interest in the BSB partnership — to a new corporation, named Blue Marble Group, Inc. (BMG 2d), formed by BMG's principals.[3] Then, on August 16, 1995, Eva and Jeffrey Cole entered a stock purchase agreement to sell all the shares of BMG Chart to PinPoint.[4]

On August 28, 1995, Owen faxed Richard McCourt, president of PinPoint, that the purchase of a partnership interest in BSB was "not allowed" under the partnership agreement, "[a]ny attempt to accomplish the same thing through shifting of assets or other subterfuges would also not be allowed," and BBA and Sewall would not "recognize any such transaction." Nevertheless, the stock purchase was carried out.

BBA and Sewall considered the "subterfuges" thus consummated a breach of the partnership agreement and so an act of withdrawal of BMG Chart from the partnership; they notified Jeffrey of this position by letters of October 23 and November 3, 1995.[5] BBA and Sewall accordingly refused BMG Chart/ PinPoint access to the partnership's books, participation in partnership decisions, or a share in any partnership profits.[6]

BBA and Sewall, considering themselves the only remaining

---

[3]Among these assets was the right to use the original name, Blue Marble Geographics, Inc., in carrying on business.

[4]The stock purchase agreement provided that "[a]t the closing the company's [BMG Chart's] sole asset will be the Partnership Interest, which the company owns free and clear."

[5]The reference was to the provision of the partnership agreement on withdrawal: "Upon any withdrawal, the remaining Partners may elect to dissolve and liquidate the Partnership or to continue it. If they elect to continue, the Partnership shall purchase the interest of the withdrawing Partner for the amount of its capital account." The letter of November 3, 1995, said there was still need to work out the details of the return of the money in BMG Chart's capital account.

[6]When it became obvious that BMG Chart and PinPoint were being shut out of the partnership, PinPoint refused to pay the full purchase price to the Coles. Eva Cole (now a principal in BMG 2d) sued PinPoint in United States District Court for the District of Maine in 1996 to recover the balance. PinPoint responded that the Coles stood in breach of their warranty to transfer the shares of BMG Chart without encumbrance, the breach consisting of the manipulative violation of the original partnership agreement. The action was settled. (In the later action in the United States District Court for the Central District of California, see *infra*, PinPoint took a rather different position that the transfer was valid and BMG Chart remained a partner, but the judge declined to hold PinPoint estopped.)

61 Mass. App. Ct. 542 (2004)                545

Better Boating Association, Inc. v. BMG Chart Products, Inc.; Maptech, Inc.

partners, in December, 1995, reorganized BSB as a partnership called BSB Electronic Charts LLP (BSB2d), with BMG Chart and PinPoint excluded.

On March 18, 1997, BSB2d and PinPoint entered into an independent contractor Value-Added Development Agreement (VADA), which contains a provision for arbitration in the event of a dispute.

On December 12, 1997, BBA and Sewall sold BSB2d's assets to a company called Maptech, Inc. (Maptech), for $2.3 million plus inventory. In this transaction Maptech replaced BSB2d in the VADA with PinPoint as to both rights and liabilities.

## PROCEEDINGS

1. *Present Massachusetts action.* On July 14, 1997, BBA, Sewall, and BSB2d commenced the present action in Superior Court against BMG Chart, PinPoint, and others, claiming that the sale of BMG Chart's stock to PinPoint was a "transfer in any manner" of BMG's partnership interest without securing the required consent of the other partners, and so constituted a breach of the partnership agreement and a withdrawal of BMG Chart from the partnership.[7] The plaintiffs sought a declaration against all defendants of the validity of this basic claim of the violation of the partnership agreement. Consequent upon such a declaration were counts against all or single defendants for breach of contract, of an implied covenant of good faith and fair dealing, and of fiduciary duty, together with allegations of intentional interference with contractual relations, and violation of G. L. c. 93A, § 11.[8]

The amended answer with counterclaim of BMG Chart and

---

[7] Throughout the litigation the plaintiffs emphasized the distinctive contribution to the original partnership expected of Jeffrey Cole, and the correspondingly inadequate substituted performance that could be attained by an outsider.

[8] BSB2d also claimed separate damages against PinPoint for the latter's failure to pay for digital computerized nautical chart products delivered to PinPoint between June, 1995, and February, 1996. On January 27, 2002, the court ordered summary judgment in favor of BSB2d for $17,575.36 with interest. This is not the subject of appeal.

PinPoint[9] filed on November 3, 1999, may be thought of as a mirror counterpart of the complaint. The defendants assert there was no attempted transfer of the partnership interest: BMG Chart remained with its partnership interest preserved; indeed, the partnership interest was its sole asset. On this view the reorganization of BSB as a limited partnership and the sale of its assets to Maptech were invalid because done without BMG Chart's consent as a continuing partner in the partnership of the three corporations. Consequent upon these allegations were the counterclaims against the plaintiffs for declaratory judgment — breach of contract, covenant of good faith and fair dealing, and fiduciary duty; also violation of c. 93A, § 11.

The amended answer set up a complaint by BMG Chart, as third-party plaintiff, against Maptech joined in the action as third-party defendant. BMG Chart charged Maptech with interference with contractual relations and violation of G. L. c. 93A, § 11, in connection with its acquisition of the BSB2d assets.

2. *Action in California.* On April 2, 1999, while the Massachusetts litigation was in the discovery stage, Maptech brought suit against PinPoint in the United States District Court for the Central District of California. Maptech brought the action as successor to BSB2d in the BSB2d-PinPoint VADA. The gravamen was patent and Lanham Act trademark infringement, plus a State statutory violation, including a charge that PinPoint had misappropriated Maptech's charts and used them to develop competing products. In dispute with PinPoint, Maptech claimed these wrongs were violations of VADA; accordingly, Maptech moved to compel arbitration under VADA's arbitration clause. PinPoint opposed the motion on precisely the ground that the lack of consent on the part of BMG Chart to BSB2d's reorganization and sale of assets had the effect of leaving Maptech without a place in VADA and so incapable of claiming arbitration thereunder.

The question whether there had been a "transfer in any manner" in breach of the partnership agreement was brought forward by PinPoint's request for "Partial Summary Adjudica-

---

[9]By agreed motion of November 12, 1998, Eva and Jeffrey Cole and BMG 2d were let out of the action.

tion re: Ownership." The parties contested this issue with fresh discovery aided by discovery materials that had been generated in the Massachusetts action, and there was elaborate briefing.

United States District Judge Stephen V. Wilson on December 10, 1999, filed his opinion which applied Massachusetts decisional law (corresponding with general law) to the meaning and application of the partnership agreement. He concluded that BMG's calculated response to the other companies' refusal of consent — leaving BMG Chart bereft of material assets, with PinPoint in shares control, and Jeffrey gone — was for practical purposes a prohibited transfer of the partnership interest and thus a withdrawal from the partnership. The judge wrote, confidently and clearly:

> "The sale of BMG Chart to PinPoint did not simply effect a change of ownership in the partnership interest. It introduced a complete stranger into BSB. Jeff Cole, the principal person responsible for operating Blue Marble and creating the software developer kit, had left the company. In addition, the corporation was completely stripped, such that its only asset was the BSB partnership interest.
>
> ". . .
>
> "The Court agrees that the sale of BMG Chart stock to PinPoint did not literally transfer the partnership interest, but [PinPoint's] argument misses the mark. The question presented here is whether the transaction constituted a transfer of the partnership interest *under the terms of the BSB Partnership Agreement*. This is not a question of traditional corporations or partnership law. It is a question of contract interpretation, requiring the Court look to Massachusetts rules of construction." (Emphasis in original.)

In the result, Maptech was confirmed as successor party to VADA. The judge denied PinPoint's application for summary adjudication and ordered the parties to arbitration.[10]

3. *Return to Massachusetts.* With the California decision in

---

[10]To date arbitration has not taken place. The record does not disclose the circumstances. At oral argument there was indication that PinPoint asserts

hand, BSB2d returned to Massachusetts and on May 12, 2000, filed in the present action a motion for summary judgment contending, upon the principle of issue preclusion ("collateral estoppel" in earlier terminology), that the Federal court's ruling on the partnership transfer issue should be held determinative of the same issue in the present action, precluding any necessity for its relitigation here. And as the issue was crucial to the entire action, partial judgment should pass for the plaintiffs, holding the defendants liable on the plaintiffs' pleaded claims and the plaintiffs free of liability on the defendants' counterclaims. (In the alternative, the summary judgment motion sought a partial judgment on the merits, without regard to issue preclusion. The defendants cross-moved for partial judgment on the merits.) There was also a motion for summary judgment by Maptech, as third-party defendant, to dismiss BMG Chart's charges laid against it in the third-party complaint.

A judge of the Superior Court on January 26, 2001, filed a memorandum of decision fully supporting the plaintiffs' position regarding issue preclusion (and thereby avoiding need to consider the proposed alternative basis for the relief). This carried with it the defeat of the claims asserted by the third-party plaintiff. On April 18, 2002, formal judgment entered in favor of the plaintiffs, made final under Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), to permit appellate review[11]; so also judgment entered in favor of Maptech, third-party defendant. PinPoint and BMG Chart noticed their present appeal from these judgments to our court. The crucial question on appeal is whether issue preclusion applies.

### ISSUE PRECLUSION

1. *Federal standards.* Federal law accepts the longstanding usual requisites to issue preclusion, ranging from "identity" between the issue first determined and that precluded, through the satisfaction of various procedural guaranties attending the determination. When it comes to the further requirement of

Maptech has not acted to start the process. Maptech says it has made an attempt, but PinPoint has not cooperated.

[11]We find no formal rule 54(b) order of record, but the intention to permit appeal is evident and the parties raise no objection.

"finality" of the determination, there is a history with much involvement by the Federal courts.

When the subject of former adjudication was receiving coherent formulation a half century ago, it was assumed that collateral estoppel as well as "merger and bar" (claim preclusion) could occur only when a final judgment had been rendered in the initial action — "final" then carrying the same, or much the same, strict meaning as attached to the customary statutory predicate of "final judgment" for the purpose of appellate review. Such was the outlook in the original Restatement of Judgments §§ 41, 45c (1942). Deeper exploration of the field in Federal cases led to a perception that the finality to be required for collateral estoppel could fairly be made less stringent than that for merger and bar. Judge Friendly expressed this insight in 1961 in the case of *Lummus Co.* v. *Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961), cert. denied, 368 U.S. 986 (1962):

> "Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."

The Restatement (Second) of Judgments (adopted in 1982) took up the theme in § 13, "Requirement of finality," which reads: "The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." A passage, explaining the background of the departure for issue-preclusion cases, goes on to enlarge upon Judge Friendly's factors or criteria: was the issue "adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered"; were the parties "fully heard";

did the court "support[] its decision with a reasoned opinion"; was the decision "subject to appeal" or was it "in fact reviewed on appeal." Restatement (Second) of Judgments § 13 comment g.

Decisions in the Federal circuits encountering the finality question have been strongly supportive of these (and like[12]) factors aimed at fair disposition of litigation while taking to heart the maxim finis sit litium.[13]

2. *Application of standards by Superior Court.* In his memorandum the judge of the Superior Court first summarized the proceedings on the merits in the Federal District Court in California. We follow his views as he turned to issue preclusion.

(a) As the court that first ruled on the partnership transfer was a Federal court (in an action founded on Federal question jurisdiction), Federal law governed the question of the preclusion of that issue from relitigation in another action (in State court). See *Hoult* v. *Hoult*, 157 F.3d 29, 31 (1st Cir. 1998); *Fidler* v. *E.M. Parker Co.*, 394 Mass. 534, 540-541 (1985); *Whitehall Co.* v. *Barletta*, 404 Mass. 497, 501 (1989). The parties agree.[14]

(b) There was identity between the partnership transfer issue first presented and decided, and the issue now the subject of preclusion. See *Grella* v. *Salem Five Cent Sav. Bank*, 42 F.3d

---

[12]Cf. *In re Brown*, 951 F.2d 564, 570 (3d Cir. 1991); *In re Docteroff*, 133 F.3d 210, 216 (3d Cir. 1997).

[13]See *O'Reilly* v. *Malon*, 747 F.2d 820, 823 (1st Cir. 1984); *Metromedia Co.* v. *Fugazy*, 983 F.2d 350, 366 (2d Cir. 1992), cert. denied, 508 U.S. 952 (1993); *In re Brown*, 951 F.2d at 569 ; *Swentek* v. *USAIR, Inc.*, 830 F.2d 552, 561 (4th Cir. 1987); *Cycles, Ltd.* v. *Navistar Financial Corp.*, 37 F.3d 1088, 1090 (5th Cir. 1994) (in effect discounting *Avondale Shipyards, Inc.* v. *Insured Lloyd's*, 786 F.2d 1265 [5th Cir. 1986]); *Gilldorn Sav. Assn.* v. *Commerce Sav. Assn.*, 804 F.2d 390, 393-394 (7th Cir. 1986); *John Morrell & Co.* v. *Local Union 304A of the United Food & Commercial Workers, AFL-CIO*, 913 F.2d 544, 563-564 (8th Cir. 1990), cert. denied, 500 U.S. 905 (1991); *Luben Indus., Inc.* v. *United States*, 707 F.2d 1037, 1040 (9th Cir. 1983); *Christo* v. *Padgett*, 223 F.3d 1324, 1338-1340 (11th Cir. 2000), cert. denied, 531 U.S. 1191 (2001).

[14]See discussion in Casad & Clermont, Res Judicata 223-226 (2001); Shapiro, Preclusion in Civil Actions 144-151 (2001); 18B Wright, Miller & Cooper, Federal Practice & Procedure §§ 4466, 4468 (2002). For the situation where the Federal court's jurisdiction is based on diversity of citizenship, see *Semtec Intl. Inc.* v. *Lockheed Martin Corp.*, 531 U.S. 497 (2001).

26, 30 (1st Cir. 1994); Restatement (Second) of Judgments § 27 comment c (1982). Here the identity is unmistakable.

(c) The determination of arbitrability between the parties was reached only through a ruling on the issue of partnership transfer, thus the issue was essential to the determination on the merits — not a kind of unintegrated dictum. We add the answer is yes to both parts of the requirement of "essentiality" as framed by the Restatement (Second) of Judgments § 27 comment j: was the issue "recognized by the parties as important and by the trier as necessary to the first judgment?"[15]

(d) The judge found, correctly, that the parties (the defense through PinPoint[16]) had actually litigated the issue, see *Keystone Shipping Co.* v. *New England Power Co.*, 109 F.3d 46, 52 (1st Cir. 1997), with opportunity to present their proofs and views in fair hearings. We agree they had the relevant documentary and other evidence open to them, and ample assistance from their counsel. The defense chafes somewhat, suggesting the proof tendered on its part was not as complete as it might have been. Yet the evidence described as foregone seems quite thin, and, after all, it was the defense in California that precipitated decision of the issue by its motion for "summary adjudication." In the indulgent practice of the time and place, the defense could probably have contrived to bring any additional material to the judge's attention for reconsideration of his decision.

(e) The judge appears satisfied regarding finality in the sense of *Lummus* or "firmness," citing that case and *O'Reilly* v. *Malone*, 747 F.2d 820, 823 (1st Cir. 1984); *Metromedia Co.* v. *Fugazy*, 983 F.2d 350, 366 (2d Cir. 1992), cert. denied, 508 U.S. 952 (1993). The factors present speak to an affirmative conclusion. The decision of the issue was not tentative (avow-

---

[15]This formulation is intended to overcome older difficulties in defining what is and is not a "mediate datum" or "evidentiary fact." Restatement (Second) of Judgments § 27 comment j. (Compare the latitude permitted by the law of Massachusetts on essentiality. See *Home Owners Fed. Sav. & Loan Assn.* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 455 [1968], explained in *Jarosz* v. *Palmer*, 436 Mass. 526, 533 [2002].)

[16]As counsel agreed at oral argument on the present appeal, there is no difficulty with representation of the interests involved in the California litigation, or with "privity."

edly or otherwise), the hearing was adequate, there was adequate deliberation, the parties were fully heard, and there was reasoned judicial opinion, as we have seen.

A significant further *Lummus* factor is the opportunity for appellate review of the initial decision of the issue. The judge evidently recognized that the Federal Arbitration Act disallows appeal from an order directing arbitration, see 9 U.S.C. § 16(b)(2); *Perera* v. *Siegel Trading Co.*, 951 F.2d 780, 783 (7th Cir. 1992), which would have carried with it review of the partnership transfer issue. The judge recognized, first, that appeal could be availed of later (as by PinPoint after confirmation of the arbitral award, see *F.C. Schaffer & Assoc.* v. *Demech Contractors, Ltd.*, 101 F.3d 40, 42-43 [5th Cir. 1996]). There is authority that counts the reviewability factor as satisfied where the ruling on the issue, incapable of review when made, is subject to review when an end point is attained[17]: the prospect of review on appeal, even if the scrutiny is not immediate but only in prospect, tends to concentrate attention of litigants (and of the judge as well) and thus improves the product along the way. It must be owned, however, that in the present case appeal was contingent and might be long delayed. The judge's second point is that reviewability is but one factor in a set; where the *Lummus* and related factors are present in strength, the importance of reviewability is qualified, and the very decision, although not appealable, may serve as firm enough for issue preclusion.[18]

On the whole we agree with the judge below that preclusion

---

[17]See *Cycles, Ltd.* v. *Navistar Financial Corp.*, 37 F.3d at 1090; *Sherman* v. *Jacobson*, 247 F. Supp. 261, 270 (S.D.N.Y. 1965). There are decisions applying issue preclusion even, apparently, where review would never be available. See *In re Docteroff*, 133 F.3d at 216 (with stress on presence of other *Lummus*-type factors); *Greenleaf* v. *Garlock, Inc.*, 174 F.3d 352, 358-361 & nn.5-6 (3d Cir. 1999). See also note 18, *infra.*

[18]See *Alexander* v. *Chicago Park Dist.*, 773 F.2d 850, 855 (7th Cir. 1985), cert. denied, 475 U.S. 1095 (1986); *Gilldorn Sav. Assn.* v. *Commerce Sav. Assn.*, 804 F.2d at 393; *John Morrell & Co.* v. *Local Union 304A of the United Food & Commercial Workers, AFL-CIO*, 913 F.2d at 563-564; *In re Brown*, 951 F.2d at 569; *Burlington N. R.R. Co.* v. *Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1233 & n.8 (3d Cir. 1995); *Greenleaf* v. *Garlock, Inc.*, 174 F.3d at 358-360.

of the issue is justified under Federal law.[19] There is a rather unusual additional feature. The Massachusetts action was already pending, taking its languid course, when the partnership transfer issue arose in the California action, and it required little imagination to see that its determination there could become decisive in Massachusetts through issue preclusion. This would sound the loud pedal on the issue and help assure its strong debate by the parties and resolution by the court. We venture to add that we believe the resolution was correct. The case for issue preclusion is persuasive. We need not, although invited, get into a detailed examination of the issue in substance as a possible alternative ground for decision.

*Judgment affirmed.*

---

[19]As to our domestic view of issue preclusion, the decision in *Tausevich* v. *Board of Appeals of Stoughton*, 402 Mass. 146, 148-150 (1988), acknowledges and accepts the definition in § 13 of the Restatement (Second) of Judgments, including the special understanding of finality for issue preclusion ("a final judgment in the traditional sense is not essential to the applicability of issue preclusion"; it may be applied "if the earlier adjudication was 'sufficiently firm to be accorded conclusive effect' "). In dictum, *Jarosz* v. *Palmer*, 436 Mass. at 534, discussing issue preclusion (non-Federal), stresses the significance of the reviewability of the earlier decision, but does not elaborate.