## Luis Alicea vs. Commonwealth.

Suffolk. April 4, 2013. - August 9, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Collateral Estoppel. Practice, Civil,* Judgment, Summary judgment. *Res Judicata. Judgment,* Preclusive effect.

In a civil action brought against the Commonwealth, in its capacity as the employer of an attorney for the Committee for Public Counsel Services, alleging malpractice and negligent infliction of emotional distress arising from the attorney's representation of the plaintiff in an underlying criminal matter, the Superior Court judge properly granted summary judgment in favor of the Commonwealth, where the plaintiff was precluded from litigating the issue of the plaintiff's alleged entitlement to a one-year sentence in the Superior Court, in that the claim that the plaintiff had suffered harm by spending more time in prison than he had to due to the attorney's actions with regard to a plea agreement had been decided in a prior Federal action against the attorney individually, the plaintiff actually litigated his claim of entitlement to a shorter sentence in the Federal action, the decision in that action was valid and binding, and the determination of the issue was essential to the judgment in the Federal action; and in that principles of Federal issue preclusion did not require complete mutuality of parties. [234-238]

CIVIL ACTION commenced in the Superior Court Department on December 9, 2008.

The case was heard by *Paul E. Troy,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Dakota D. Martin* for the plaintiff.

*Sarah M. Joss,* Assistant Attorney General, for the Commonwealth.

*Alex G. Philipson,* pro se, amicus curiae, submitted a brief.

DUFFLY, J. After spending three and one-half years in State prison, Luis Alicea filed suit in the United States District Court for the District of Massachusetts against his former defense

counsel, Lawrence J. McGuire, an attorney employed by the Committee for Public Counsel Services.[1] Alicea's complaint asserted claims of intentional infliction of emotional distress and violation of 42 U.S.C. §§ 1983 and 1988.[2] These claims were based on Alicea's assertions that he should have received a one-year sentence in connection with his plea of guilty to a firearm offense, and that McGuire's conduct, allegedly having conspired with the prosecutor, had resulted in Alicea's serving an illegal sentence of three and one-half years. A judge granted summary judgment in favor of McGuire; the judgment was affirmed by the United States Court of Appeals for the First Circuit.

While his Federal court case was pending, Alicea commenced the underlying action in the Superior Court against the Commonwealth as McGuire's employer; McGuire was not named as a defendant. The Superior Court action asserted claims of malpractice and negligent infliction of emotional distress, premised on the allegation that McGuire had caused Alicea to serve an illegal sentence. Concluding that the judgment entered in the Federal action precluded Alicea from litigating the issue of his purported entitlement to a one-year sentence, a Superior Court judge allowed the Commonwealth's motion for summary judgment. Alicea appealed, and we transferred the case from the Appeals Court on our own motion.

Because the issue central to Alicea's claims in the Superior Court was decided in the Federal action, application of the doctrine of issue preclusion under Federal common law prevents Alicea from relitigating the issue. We therefore conclude that the Commonwealth's motion for summary judgment was properly allowed.[3]

*Background facts and proceedings.*[4] In 2003, a grand jury returned indictments charging Alicea with three firearm of-

---

[1]The Committee for Public Counsel Services is an agency of the Commonwealth.

[2]Alicea also filed claims for malpractice and violations of G. L. c. 93A; McGuire's motion to dismiss these claims was allowed.

[3]We acknowledge the amicus brief of Alex G. Philipson.

[4]The facts are taken from undisputed facts in the summary judgment record. The parties submitted a joint statement of facts with appended exhibits that included, inter alia, transcripts of the plea colloquy; filings in both the State

fenses: discharge of a firearm within 500 feet of a dwelling, G. L. c. 269, § 12E; unlicensed possession of a firearm outside his residence or place of business, G. L. c. 269, § 10 (*a*) (carrying statute or § 10 [*a*]), after having been convicted previously of two qualifying violent or drug-related offenses, G. L. c. 269, § 10G (*b*) (repeat offender statute or § 10G); and possession of a firearm without an FID card, G. L. c. 269, § 10 (*h*) (§ 10 [*h*]). The most serious potential penal consequence was the enhanced penalty sought under the repeat offender statute, § 10G, for violation of § 10 (*a*), the carrying statute. Under the sentencing enhancement provisions of § 10G, Alicea faced a mandatory minimum sentence of ten years in State prison, due to his prior convictions of drug-related offenses. At that time, the indictment for unlawful discharge of a firearm carried a maximum sentence of three months in a jail or house of correction, and the indictment for unlawful possession of a firearm carried a maximum sentence of one year in a jail or house of correction.[5]

McGuire, who had been appointed to represent Alicea, entered into plea negotiations with the prosecutor, and an agreement was reached whereby Alicea would plead guilty to unlawful carrying of a firearm in violation of § 10 (*a*), the underlying charge in the indictment that sought a sentencing enhancement pursuant to § 10G, and the Commonwealth would enter a nolle prosequi on so much of the indictment as provided for sentencing enhancement under § 10G.[6] Without the repeat offender enhancement provided under § 10G, the maximum sentence on

and Federal actions; depositions of the trial prosecutor and Alicea; and affidavits by the prosecutor, McGuire, and Alicea. Although some of Alicea's responses to the joint statement consisted of objections, he did not contest that the acts and events took place, but objected only to characterizations of those acts and events.

[5]General Laws c. 269, § 10 (*h*) (§ 10 [*h*]), has since been amended to provide for a maximum sentence of two years in a jail or house of correction and a fine of up to $500. Both the Federal and State complaints filed by Luis Alicea incorrectly state that the penalty at the time of sentencing was two years.

[6]The parties refer to G. L. c. 269, § 10 (*a*) (§ 10 [*a*]), as a lesser included offense of G. L. c. 269, § 10G (*b*) (§ 10G). Section 10G, however, does not define a stand-alone, separate offense. Rather, the repeat offender statute establishes sentencing enhancements for offenders who, "having been previously convicted of two violent crimes, or two serious drug offenses or one violent crime and one serious drug offense," commit certain firearms offenses, including those prohibited by § 10 (*a*) and (*h*). See *Commonwealth* v.

the § 10 (*a*) carrying charge was five years in State prison. In exchange for Alicea's guilty plea, the parties agreed that the prosecutor would recommend a sentence of from three to five years in State prison and file a nolle prosequi on the remaining indictments. Concerned by the ten-year mandatory minimum sentence he faced under § 10G, Alicea "took [the plea agreement] right away."

A plea hearing was conducted on March 18, 2004. During the hearing, the prosecutor erroneously informed the judge that Alicea had agreed to plead guilty to unlawful *possession* of a firearm. As stated, at that time the maximum penalty for unlawful possession of a firearm in violation of § 10 (*h*) was a one-year sentence. The prosecutor correctly explained to the judge that, pursuant to the terms of the negotiated plea, the defendant had agreed to plead guilty in exchange for a sentencing recommendation of from three to five years in State prison and entry of a nolle prosequi on the indictment charging unlawful discharge in violation of G. L. c. 269, § 12E.[7] The prosecutor's statement that the agreement included the filing of a nolle prosequi on the entire indictment charging a violation of § 10 (*a*) and a sentencing enhancement under § 10G, however, was only partially correct.[8] McGuire did not correct the prosecutor's misstatement

*Fernandes*, 430 Mass. 517, 520-521 (1999), cert. denied sub nom. *Martinez* v. *Massachusetts*, 530 U.S. 1281 (2000) (repeat offender sentencing enhancement does not constitute "freestanding crime"; "the counts for the current offense and for the repeat offense are viewed as parts of one indictment and charge only one crime with a sentencing enhancement provision"). The relevant indictment against Alicea sets forth § 10 (*a*) (possessing firearm "not then being present in or on his residence or place of business") as the underlying charge on which sentencing enhancement was being sought pursuant to § 10G ("having been previously convicted of two violent crimes or two serious drug offenses"). "In the normal course of trying a repeat offender indictment, if a guilty verdict is reached on the current offense, a separate trial subsequently is held on the repeat offense. A guilty finding then will result in the imposition of an enhanced sentence." *Commonwealth* v. *Harris*, 75 Mass. App. Ct. 696, 703 (2009).

[7]The prosecutor stated incorrectly that the agreement was to plead guilty to possession of a firearm, and also incorrectly referenced count three ("the third offense, 003"), corresponding to the possession charge. However, the prosecutor's description of the evidence the Commonwealth expected to prove if the matter went to trial included facts sufficient to support a conviction under the carrying statute, § 10 (*a*). Alicea admitted to the accuracy of those facts.

[8]The plea agreement called for Alicea to plead guilty to so much of the

and did not inform the judge that Alicea had agreed to plead guilty to unlawful *carrying* of a firearm under § 10 (*a*), rather than to unlawful *possession* of a firearm under § 10 (*h*). Consistent with the prosecutor's representation regarding the agreed-upon sentence, the judge imposed a sentence of from three to five years in State prison. The prosecutor thereafter filed a nolle prosequi on the indictment that included both the underlying offense of unlawful carrying, § 10 (*a*), and the repeat offender provision of § 10G. The plea agreement, however, called for entry of a nolle prosequi to only that portion of the indictment seeking sentencing enhancement as a repeat offender. Pursuant to the terms of the plea agreement, the prosecutor also filed a nolle prosequi on the indictment charging unlawful discharge of a firearm.

These errors came to light several days later, when the Department of Correction informed the prosecutor that the three-to five-year sentence imposed did not conform to the statutory requirements of § 10 (*h*), the indictment for which the docket sheet and supporting documentation indicated that the defendant had been sentenced. The prosecutor contacted McGuire and informed him that an error had occurred, and that he intended to file a motion to amend the indictment so that it included the correct citation to § 10 (*a*), thereby "correspond[ing] to the plea deal that . . . Alicea had accepted." McGuire misinterpreted the prosecutor's message; he understood the prosecutor to mean that the indictment still referred, erroneously, to enhanced sentencing under § 10G. Without reviewing the motion or consulting Alicea, he agreed to assent to the prosecutor's motion to amend the indictment. McGuire did so "to preserve for [his] client . . . the sentence that he had agreed to in the plea deal." The judge who had conducted the plea colloquy allowed the motion to amend.

Alicea did not learn of the errors until shortly before September 4, 2007. On that date, he filed a motion for release from

indictment as charged unlawful carrying of a firearm under § 10 (*a*); in exchange, the prosecutor agreed not to seek the sentencing enhancement under § 10G. Thus, so much of the indictment as provided for sentencing enhancement under § 10G should have been dismissed, leaving intact so much of the indictment as set forth the underlying charge of unlawful carrying under § 10 (*a*).

unlawful confinement, alleging that he had pleaded guilty to the unlawful possession charge, which supported a maximum sentence of only one year's incarceration. The same judge allowed Alicea's motion on October 19, 2007.

1. *United States District Court action.* Alicea filed suit in the United States District Court for the District of Massachusetts against McGuire, asserting claims of intentional infliction of emotional distress; violations of his civil rights, 42 U.S.C. §§ 1983 and 1988; malpractice; and violations of G. L. c. 93A. McGuire's motion to dismiss Alicea's claims was allowed in part, resulting in dismissal of all but the claims for intentional infliction of emotional distress and violations of Alicea's civil rights. In those claims, Alicea alleged that McGuire, in conspiracy with the prosecutor, had engaged in conduct that resulted in the imposition of an illegal sentence on Alicea.

McGuire's motion for summary judgment was allowed; the judge concluded that

> "there was no 'benefit' to which Alicea was entitled after the plea hearing. Without such a possible benefit there is no reasonable inference of a conspiratorial agreement. Simply put, McGuire may have participated in actions that resulted in an illegal sentence, but on this record, there is neither evidence nor inferences to support the conclusion that McGuire agreed to inflict a wrong."

As to the claim of intentional infliction of emotional distress, the judge concluded that Alicea had agreed to accept a plea to a sentence of from three to five years in exchange for dismissal of other charges; that plea was not illegal; and, "at the time of the motion to amend Alicea did not face, legally, only one year in custody." In an unpublished decision, the First Circuit affirmed the judgment, concluding that "Alicea was not entitled to a sentence of only one year." Alicea *vs.* McGuire, U.S. Ct. App., No. 10-1329 (1st Cir. Dec. 7, 2010).

2. *Superior Court action.* Alicea filed the underlying action in the Superior Court on December 9, 2008, before the First Circuit decision issued. The complaint asserts claims of malpractice and negligent infliction of emotional distress against the Commonwealth, in its capacity as McGuire's employer;

McGuire was not named as a defendant. The complaint alleges that McGuire acted negligently by failing to consult Alicea about the error made at the plea colloquy, and by assenting to the prosecutor's motion to amend the indictment absent such consultation. Both causes of action require a plaintiff to prove that he suffered harm caused by the negligent conduct of the defendant.[9] The harm Alicea alleges he suffered is the additional prison time he served beyond one year, premised on his asserted entitlement to a one-year sentence on his plea of guilty to unlawful possession of a firearm.

After entry of the decision by the First Circuit, the Commonwealth filed a motion for summary judgment in the Superior Court. A Superior Court judge concluded that Alicea was precluded from litigating the issue of his alleged entitlement to a one-year sentence, and allowed the Commonwealth's motion. This appeal followed.

*Discussion.* We review a grant of summary judgment de novo. See, e.g., *Juliano* v. *Simpson*, 461 Mass. 527, 529 530 (2012). "[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56 (c), [365 Mass. 824 (1974),] unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). Whether a previous decision is to be given preclusive effect presents a question of law appropriate for resolution on summary judgment. See, e.g., *Premier Capital, LLC* v. *KMZ, Inc.*, 464 Mass. 467, 469 (2013).

The preclusive effect of a Federal court judgment is governed by Federal common law. *Taylor* v. *Sturgell*, 553 U.S. 880, 891

---

[9]A claim for legal malpractice requires a plaintiff to prove: (1) an attorney-client relationship; (2) a duty to exercise a reasonable degree of care and skill in the performance of the attorney's legal duties; (3) a violation of this duty; and (4) reasonably foreseeable harm caused by the attorney's negligence. *Correia* v. *Fagan*, 452 Mass. 120, 127 (2008). To prevail on a claim of negligent infliction of emotional distress, a plaintiff must establish: (1) negligence; (2) emotional distress; (3) causation; (4) physical harm; and (5) that a reasonable person would have suffered emotional distress under the circumstances. *Rodriguez* v. *Cambridge Hous. Auth.*, 443 Mass. 697, 701 (2005).

(2008). See, e.g., *Whitehall Co.* v. *Barletta,* 404 Mass. 497, 501 (1989). Under Federal common law, the doctrines of claim preclusion and issue preclusion (collectively, res judicata) define the preclusive effect of a prior judgment.[10] *Taylor* v. *Sturgell,* *supra* at 891-892. Because Alicea's Federal action asserted claims under 42 U.S.C. §§ 1983 and 1988, and subject matter jurisdiction was thus premised on 28 U.S.C. § 1331 (Federal question),[11] we apply the rules of res judicata developed by the Federal courts. See *Taylor* v. *Sturgell, supra* at 892.

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.' " *Id.,* quoting *New Hampshire* v. *Maine,* 532 U.S. 742, 748 (2001). "Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor* v. *Sturgell, supra,* quoting *New Hampshire* v. *Maine, supra* at 748-749. Together, claim preclusion and issue preclusion "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen* v. *McCurry,* 449 U.S. 90, 94 (1980). In addition, a State court's practice of giving preclusive effect to a Federal court's deci-

---

[10] "Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.' " *Taylor* v. *Sturgell,* 553 U.S. 880, 892 n.5 (2008).

[11] The basis for subject matter jurisdiction in the prior Federal action is critical to a determination of its preclusive effect. Where the prior judgment was rendered by a Federal court exercising subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship), the United States Supreme Court has adopted, "as the federally prescribed rule of decision, the law that would be applied by [S]tate courts in the State in which the [F]ederal diversity court sits." *Semtek Int'l Inc.* v. *Lockheed Martin Corp.,* 531 U.S. 497, 508 (2001). See *Taylor* v. *Sturgell, supra* at 891 n.4; *Better Boating Ass'n, Inc.* v. *BMG Chart Prods., Inc.,* 61 Mass. App. Ct. 542, 550 n.14 (2004). By contrast, where the prior judgment was rendered by a Federal court exercising subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (Federal question), "[F]ederal courts participate in developing 'uniform [F]ederal rule[s]' of res judicata, which [the United States Supreme] Court has ultimate authority to determine and declare." *Taylor* v. *Sturgell, supra* at 891, quoting *Semtek Int'l Inc.* v. *Lockheed Martin Corp., supra.*

sion, and vice versa, promote "the comity between [S]tate and [F]ederal courts that has been recognized as a bulwark of the [F]ederal system." *Id.* at 96.

Here we are confronted with the application of issue preclusion, not claim preclusion. Issue preclusion applies when "(1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment." *Latin Am. Music Co.* v. *Media Power Group, Inc.*, 705 F.3d 34, 42 (1st Cir. 2013), quoting *Mercado-Salinas* v. *Bart Enters. Int'l, Ltd.*, 671 F.3d 12, 21-22 (1st Cir. 2011). As the party arguing for issue preclusion, the Commonwealth bears the burden of establishing these four elements.[12] See *Lundborg* v. *Phoenix Leasing, Inc.*, 91 F.3d 265, 272 (1st Cir. 1996).

Alicea properly does not contest that the first three elements have been satisfied. As to the first element, both of the causes of action in the current case depend on Alicea's assertion that he suffered harm by spending more than one year in prison, which in turn is premised on his claim that he was entitled to a maximum sentence of one year's incarceration. This issue is the

---

[12]Although not included in the Commonwealth's answer, the defense of issue preclusion was properly raised by the Commonwealth. Ordinarily, "a failure to plead an affirmative defense results in a waiver and exclusion of the defense from the case." *Demoulas* v. *Demoulas*, 428 Mass. 555, 575 n.16 (1998). See Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974). Here, however, the decision of the United States Court of Appeals for the First Circuit entered more than one year after the Commonwealth had filed its answer. In similar circumstances, Federal courts applying the Federal analog to Mass. R. Civ. P. 8 (c) have concluded that issue preclusion is raised properly when a party provides "as much notice of the claim . . . as could reasonably be required." See *Metromedia Co.* v. *Fugazy*, 983 F.2d 350, 367 (2d Cir. 1992), cert. denied, 508 U.S. 952 (1993) (where decision to be given preclusive effect "was filed on the day the present case went to trial," defendant did not waive issue preclusion defense by arguing issue preclusion in opening statement). See also *Sanchez* v. *Santa Ana*, 915 F.2d 424, 431-432 (9th Cir. 1990), cert. denied, 502 U.S. 957 (1991) (where judgment to be given preclusive effect entered after filing of defendant's answer, defendant's argument for issue preclusion in pretrial brief should be treated as motion for leave to file supplemental answer); 18 C.A. Wright, A.R. Miller, & E.H. Cooper, Federal Practice and Procedure § 4405, at 99-100 (2d ed. 2002) (court may treat late-arising preclusion defense as if it had been pleaded without requiring formal supplemental pleading).

same as that decided by the First Circuit when it concluded that "Alicea was not entitled to a sentence of only one year."[13] Alicea *vs.* McGuire, U.S. Ct. App., No. 10-1329 (1st Cir. Dec. 7, 2010). Second, Alicea actually litigated his claim of entitlement to a one-year sentence in his Federal action. See *id.* In that case, Alicea argued that, having pleaded guilty to unlawful possession of a firearm, he was guaranteed a maximum sentence of one year's incarceration because principles of double jeopardy barred the Commonwealth from refiling the indictment charging unlawful carrying of a firearm, as to which a nolle prosequi had entered.[14] Third, the decision in that case constituted a valid and binding final judgment. See *Lummus Co.* v. *Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961), cert. denied sub nom. *Dawson* v. *Lummus Co.*, 368 U.S. 986 (1962).

Alicea contests only the fourth factor, arguing that the issue of his entitlement to a one-year sentence was not essential to the decision by the First Circuit because its decision rested on two independent findings: (1) Alicea was not deprived of any "right" to a one-year sentence, and (2) McGuire could not have intended any harm toward Alicea. Alicea contends that neither finding can be viewed as essential to the decision because either one alone would have been sufficient to affirm the conclusion of the United States District Court. See 18 C.A. Wright, A.R. Miller, & E.H. Cooper, Federal Practice and Procedure § 4421, at 564-567 (2d ed. 2002) (where two findings would be sufficient to sustain judgment independently of each other, some

---

[13]Further support for our conclusion that the issues are the same is demonstrated by Alicea's brief, which devotes several pages to argument that the First Circuit erred in its decision, because Alicea was entitled to a maximum sentence of one year's incarceration.

[14]Relying on *Commonwealth* v. *Rollins*, 354 Mass. 630, 632 (1968) (doctrine of double jeopardy does not prevent revival of indictment on which nolle prosequi entered before jury impanelment), the First Circuit determined that the prohibitions against double jeopardy did not preclude revival of the indictment charging Alicea with unlawful carrying of a firearm. Contrast *Commonwealth* v. *Benton*, 356 Mass. 447, 448-449 (1969) (Commonwealth agreed to entry of nolle prosequi on complaints charging unlawful sale of drugs in exchange for guilty pleas to drug possession; after defendants pleaded guilty to possession charges, Commonwealth obtained indictments for same offenses as to which nolle prosequi had entered; in circumstances, agreement to enter nolle prosequi upheld and subsequent prosecution of those offenses barred).

Federal courts have concluded, for purposes of issue preclusion, that neither finding was necessary to judgment).

We do not agree. The central premise of Alicea's argument before the First Circuit was that, because Alicea had pleaded guilty to unlawful possession of a firearm, the Commonwealth was precluded from refiling the indictment charging Alicea with unlawful carrying of a firearm. As stated, see note 14, *supra*, the Federal court rejected this argument and determined that "Alicea was not entitled to a sentence of only one year." Alicea *vs*. McGuire, *supra*. This finding was inextricably intertwined with that court's conclusion that "[n]o reasonable jury could have inferred . . . that McGuire intended any harm toward his client." Instead, McGuire had merely "corrected the oversights" made at the plea colloquy in order to ensure that the Commonwealth would not revive the portion of the indictment seeking a sentencing enhancement under § 10G. See *id*.[15] Thus, the Commonwealth has met its burden of establishing that the issue is precluded under Federal law.

Lastly, we note that the doctrine of issue preclusion applies to this case notwithstanding that the defendant in the current action (the Commonwealth) was not the defendant in the prior Federal action (McGuire). Federal issue preclusion does not require complete mutuality of parties. See *Allen* v. *McCurry*, 449 U.S. 92, 94-95 (1980); *Montana* v. *United States*, 440 U.S. 147, 154-155 (1979). See *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326-333 (1979); *Blonder-Tongue Lab., Inc.* v. *University of Illinois Found.*, 402 U.S. 313, 349-350 (1971).[16]

---

[15]We note that even if the decision could be viewed as resting on two independent findings, the majority of Federal courts would give preclusive effect to each finding that has actually been litigated and decided. See *Jean Alexander Cosmetics, Inc.* v. *L'Oreal USA, Inc.*, 458 F.3d 244, 251-255 (3d Cir. 2006), cert. denied, 549 U.S. 1305 (2007), and cases cited.

"Denying preclusive effect to a finding that would support a court's judgment merely because the case was disposed of on other grounds as well would result in the inefficient use of private and public litigation resources. Courts routinely decide cases on multiple grounds, each of which has been fully litigated and given careful consideration due to their potentially dispositive role in the case. Because the interests that the necessity principle protects are not compromised under these circumstances, it would be curious to conclude that none of these findings were necessary to the judgment for purposes of collateral estoppel." *Id*. at 253.

[16]See 18A C.A. Wright, A.R. Miller, & E.H. Cooper, Federal Practice and Procedure § 4464, at 692 (2d ed. 2002).

Because Alicea had a full and fair opportunity to litigate his purported right to a one-year sentence, he cannot litigate the same issue for a second time in the present action. Since another court has determined already that Alicea was not entitled to a maximum of one year's incarceration, he cannot establish that, as a result of McGuire's conduct, he suffered harm by being incarcerated for more than one year.[17]

*Judgment affirmed.*

---

[17]Because our conclusion is sufficient to dispose of Alicea's claims, we do not reach the unresolved issue raised by Alicea on appeal: whether a former criminal defendant who alleges that his counsel's negligence caused him to suffer an illegal sentence must prove his actual innocence in order to establish a claim of legal malpractice.