Hillman, J.
After a trial, without jury, and based upon all the credible evidence, the court makes the following findings of fact and rulings of law.
On July 10, 1995 the defendant William H. Harris (Harris) leased a new Porsche Carrera. His lease agreement was assigned by the lessee to the defendant Volkswagen Credit, Inc. (Volkswagen). Harris insured his vehicle with the plaintiff Commerce Insurance Company (Commerce). On October 29,1995 Harris was driving his Porsche at the Bridghampton Speedway as part of a program put on by the Porsche Club of America. During the program the vehicle was involved in a one-car accident and sustained serious damages.
That accident spawned this litigation which Commerce commenced against Harris and Volkswagen seeking a Declaratory Judgment that they could disclaim coverage under the automobile insurance policy. Harris and Volkswagen filed answers and counter claims against Commerce and cross claims against each other. The complaint for declaratory judgment by Commerce against Harris and Harris’s counterclaim against Commerce was tried by a jury. That jury found that the loss was an insured risk but that the conduct of Commerce was not a violation of G.L.c. 93A.
The parties agreed that the declaratory judgment between Commerce and Volkswagen could be decided by the court jury waived upon stipulated facts. The cross claims between Harris, Volkswagen and Commerce were likewise submitted to the court jury waived. The cross claims essentially involve the claims of Harris that he sustained incidental damages due to the failure of Commerce to cover his loss. Finally Harris made claim against Commerce for money damages for Commerce’s alleged failure to pay the claim in a timely fashion as provided in G.L.c. 90, §.340.
I. The declaratory judgment between Commerce and Volkswagen
The purpose of an action for declaratory judgment is “to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations.” G.L.c. 231A, §9 (1994 ed.). Chapter 231A should be liberally construed and administered. Id.; Pazott v. Director of the Div. of Marine Fisheries, 417 Mass. 565, 569 (1994). In the present case, there is an actual controversy between *714 Volkswagen and Commerce as to whether Volkswagen is entitled to reimbursement under the policy.
Volkswagen is the owner of the Porsche and listed on the insurance policy as a secured lender and loss payee. Commerce, while acknowledging Volkswagen’s status, has refused to pay the secured lender for the loss. Commerce cites Part 7 of the sixth edition of the Massachusetts Automobile Insurance Policy (policy) in support of their position not to pay Volkswagen. Part 7 of the policy allows that the insurance company will pay for any damage to the auto caused by a collision. It also disclaims liability for any damage done to a motor vehicle “. . . if an accident occurs while an auto covered under this Part is being operated in any prearranged or organized racing, speed or demolition contest or in practice or preparation for any such contest.”
Volkswagen claims that the disclaimer does not affect their rights to get paid and point to Part 13 of the policy in support of their position. That part provides where pertinent:
When your Coverage Selections Page shows that a lender has a secured interest in your auto, we will make payments under Collision, . . . according to the legal interests of each party . . .
If you have given a lender a secured interest in your auto after December 31, 1988, the secured lender’s right of payment will not be invalidated by your acts or neglect except that we will not pay if the loss of or damage to your auto is the result of conversion . ..
When we pay any secured lender we shall, to the extent of our payment have the right to exercise any of the secured lender’s legal rights of recovery . . .
It seems abundantly clear that the secured lender was entitled to payment since the policy provides that “the secured lender’s right of payment (would) not be invalidated by (Harris’s) acts or neglect.” Further, this position is fortified by the existence of language specifically disclaiming liability for payment to the secured lender upon the occurrence of several contingencies, i.e., conversion, embezzlement, or secretion by the insured or a household member or through arson, theft etc. committed at the direction of the insured Harris. “ ‘Exclusions from coverage are to be strictly construed,’ and any ambiguity in the exclusion ‘must be construed against the insurer.’ ” Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 282 (1997), quoting Vappi & Co. v. Aetna Cos. & Sun Co., 348 Mass. 427, 431 (1965). Since the policy does not specifically exclude racing from the right of the secured lender to recovery, it follows that they should by paid.
II. Harris’ claim that Commerce violated G.L.c. 90, §340
Harris seeks double damages and attorneys fees from Commerce for their failure to pay his claim within the time specified in G.L.c. 90, §340 (1998 ed.). That statute provides, in part, that “(i]n any case where the insurer fails to make payment within seven days of receipt of the above claim form, the insured may commence a civil action for payments claimed to be due. If the court determines that the insurer was unreasonable in refusing to pay said insured’s claim, the claimant shall be entitled to recover double the amount of damage plus costs and reasonable attorneys’ fees fixed by the court.”
In the underlying action for declaratory judgment the issue of whether Harris’ loss was covered under the policy was decided by the jury in favor of Harris. The jury also determined in response to a special jury question that Commerce’s failure to pay the claim did not amount to an "unfair or deceptive act or practice” within the meaning of Chapter 93A. While the court is cognizant of the fact that a jury did not find Commerce’s practices to have violated the Commonwealth’s consumer protection statute the court must decide the narrower question of whether Commerce’s refusal to pay was “unreasonable” within the meaning of G.L.c. 90, §340.
The loss that Commerce was presented with was the subject of conflicting opinions about whether it should be covered. Several other insurers had chosen to accept similar claims. Commerce had secured a coverage opinion from Massachusetts counsel which indicated that the claim should be accepted. They also had in their possession an opinion letter from a lawyer outside of the Commonwealth which opined that coverage should be denied. Since this was a case with no legal precedent and they were understandably nervous about their exposure to losses incurred while their insureds were operating high performance automobiles on race tracks, it cannot be said that their delay was unreasonable. See, e.g., Kilfoyle v. Liberty Mutual Ins. Co. 56 Mass.App. Dec. 134, 140 (1975) (where court found insurer’s decision to withhold payment pending a judicial determination as to its liabiUiy was not “unreasonable”). Compare, Laporte v. Royal Globe Indemnity Co., 54 Mass.App. Dec. 185, 193 (1974) (court determined insurer’s failure to make payment for 311 days following notice of claim, was “unreasonable”).
While the court is aware that Commerce had in its possession much evidence that would tend to support the proposition that Harris was engaged in a drivers’ education program when the loss occurred, they also had some contrary information. Furthermore, Commerce made its position known early to Harris and initiated this litigation.
III. Harris’ claim for back lease payments and other out of pocket expenses
The parties agreed that certain incidental expenses that Harris incurred were to be decided by the court and not submitted to the jury. Specifically the parties have agreed that Harris paid $3072.84 out of his own pocket. These monies were paid to Volkswagen under the terms of the motor vehicle lease. When Harris realized that Commerce was not going to make a quick *715 settlement he suspended these payments with the assent of Volkswagen.
Had Commerce covered the loss as they were obliged to do Harris would not have made the above payments. Thus, this court awards Harris $3072.84 to be paid by Commerce.
ORDER
It is therefore ORDERED that:
1. The defendant Volkswagen Credit, Inc. is entitled to be reimbursed by the plaintiff under the terms of the motor vehicle insurance policy in effect at the time of the accident.
2. A finding enter for the plaintiff, defendant in counterclaim, Commerce on the counterclaim of Harris under G.L.c. 90, §340.
3. A finding enter for the defendant, plaintiff in counterclaim Harris against the plaintiff, defendant in counterclaim, Commerce in the amount of $3072.84.