SUPERIOR COURT 
 
 COMMERCE INSURANCE COMPANY V. FIRST HELP FINANCIAL, LLC and MARCIO R. RODRIGUES-PESSOA

 
 Docket:
 1884CV02106-BLS2
 
 
 Dates:
 April 16, 2019
 
 
 Present:
 Kenneth W. Salinger Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 '
 
 

 
First Help Financial, LLC, is listed as a secured lender on a Massachusetts motor vehicle insurance policy issued by Commerce Insurance Company to Marcio Rodrigues‑Pessoa. First Help seeks to recover for collision damages to the vehicle under the policy's "Secured Lenders" provision. Commerce asserts that First Help's claim is barred by the policy's "Vehicle Sharing and Public or Livery Conveyance Exclusion" because the collision happened while the vehicle was being used to carry passengers for hire through the transportation network company called Uber. Commerce filed suit to obtain declaratory judgment as to whether First Help may recover under the policy.
Commerce and First Help have submitted the matter as a "case stated," asking the Court to declare their legal rights based on agreed facts.
The Court may decide this matter even though Rodrigues‑Pessoa was never served with process and the claims against him should therefore be dismissed. Rodrigues‑Pessoa is not a necessary party because his rights as the named insured are not at issue; the dispute as presented in the agreed facts only affects First Help's independent rights as a secured lender.
First Help is entitled on the agreed facts to recover collision damages from Commerce. First Help cannot use the doctrine of issue preclusion to defeat Commerce's claim because the prior decision it cites involved a different issue. But, on the merits, First Help's claim under the Secured Lenders provision is not barred by the Public Conveyance Exclusion, even though the collision happened while the vehicle owner was allowing a friend to use his car to drive for Uber.
Judgment will enter declaring First Help's right to recover against Commerce and dismissing the claims against Mr. Rodrigues‑Pessoa without prejudgment.
-1-
1. Factual Background. No findings of fact are needed because Commerce and First Help stipulated to an agreed statement of facts, asked the Court treat that statement and accompanying documents as the complete factual record, agreed that the Court may draw reasonable inferences in applying the law to those facts, and asked the Court to resolve their dispute on a "case stated" basis.[1] "Where a statement of agreed facts contains all the material facts on which the rights of the parties are to be determined in accordance with law, it constitutes a 'case stated.' "[2] The Court must accept the parties' agreed statement of facts "as indisputably true."[3] When parties present a matter as a case stated "all that remains is for the judge to apply the correct principles of law and decide the case."[4]
The facts agreed to by Commerce and First Help, which the Court accepts as true, establish the following.

  

1.1. The Insurance Policy. Commerce issued a standard Massachusetts Automobile Insurance Policy to Mr. Rodrigues‑Pessoa for the period December 2, 2016, to December 2, 2017. This Policy, number GKR297, provided various coverages, including collision damage coverage with a $500 deductible. The vehicle insured under this policy was a 2015 Ford Fusion. First Help had a security interest in the vehicle. It was listed as a "Secured Lender" on the Policy's coverage selection pages.
The collision provision of the Policy provides no‑fault coverage. Commerce agreed to "pay for any direct and accidental damage" to the insured vehicle, no matter "who is at fault." The Policy places an upper limit on the collision damage coverage, stating that Commerce will pay no more than "the cash value of the auto or the cost
---------------------------
[1] See New England Found. Co. v. Am. Mut. Liab. Ins. Co., 358 Mass. 157, 159, (1970) (in case submitted to Superior Court judge "for decision on a statement of agreed facts constituting a case stated," the judge's "purported findings of fact" were irrelevant); accord Rogers v. Attorney General, 347 Mass. 126, 130‑131 (1964).
[2] Massachusetts Bay Transp. Auth. v. City of Somerville, 451 Mass. 80, 84 (2008), quoting Caissie v. City of Cambridge, 317 Mass. 346, 347 (1944).
[3] Coral Gables v. Granara, 285 Mass. 565, 568 (1934); accord Millen v. John Hancock Mut. Life Ins. Co., 300 Mass. 83, 84 (1938). A court may also draw reasonable inferences from the agreed facts, as the parties expressly agreed in this case. See Murphyv. City of Boston, 337 Mass. 560, 561 (1958).
[4] Langdoc v. Gevaert Co. of Am., 315 Mass. 8, 10 (1943); accord, e.g., Richard D. Kimball Co. v. City of Medford, 340 Mass. 727, 728‑29 (1960).
‑ 2 ‑
to physically repaid the auto, whichever is less," and that in all cases Commerce would subtract the $500 deductible from the amount it owed for collision damage.
The Policy includes a "Vehicle Sharing and Public or Livery Conveyance Exclusion" that bars the named insured from recovering collision damages incurred while the insured vehicle is being used in connection with a transportation network company like Uber or Lyft. This provision provides, in relevant part, that:
[Commerce] will not pay damages or benefits under any Coverage Part of your policy while your auto is: * * *
Available for use as a public or livery conveyance, including use of your auto for hire through a ride sharing arrangement, or a Transportation Network Company (TNC) which operates under an agreement for compensation. This includes but is not limited to any period of time a vehicle is being used by you or any household member who is logged into a TNC as a driver, whether or not a passenger is occupying the vehicle.
A TNC is defined as an online enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.
The Court will refer to this provision as the Public Conveyance Exclusion.
In addition, the Policy also includes a "Secured Lenders" provision that states as follows:  

When your Coverage Selections Page shows that a lender has a secured interest in your auto, [Commerce] will make payments under Collision, Limited Collision and Comprehensive (Parts 7, 8 and 9) according to the legal interests of each party.
The secured lenders right of repayment will not be invalidated by your acts or neglect except that we will not pay if the loss of or damage to your auto is the result of conversion, embezzlement, or secretion by you or any household member. Also, we will not pay the secured lender if the loss of or damage to your auto is the result of arson, theft or any other means of disposal committed by you or at your direction.
When we pay any secured lender we shall, to the extent of our payment[,] have the right to exercise any of the secured lender's legal rights of recovery. If you do not file a proof of loss as provided in this policy, the secured lender must do so within 30 days after the loss or damage becomes known to the secured lender.
The parties have stipulated that First Help was listed as a secured lender on the coverage selection pages and also that First Help's interests were, at all times, properly disclosed to Commerce.
-3-
1.2. The Collision. The Ford Fusion insured under this Policy was involved in a collision in San Bruno, California. The accident occurred on October 8, 2017, which is within the Policy period. The person driving the insured vehicle rear‑ended another vehicle on an expressway.
At the time of this collision a friend of Mr. Rodrigues‑Pessoa, whose name is Pedro Henrique Manicobe Dearaujo, was using the insured vehicle to transport three Uber passengers. Mr. Dearaujo told the police that he regularly drives the vehicle under Rodrigues‑Pessoa's Uber driver account.[5] Uber is a "transportation network company" for purposes of applying the Public Conveyance Exclusion in the Policy.
These agreed facts strongly support inferences that Rodrigues‑Pessoa knowingly let Dearaujo use his vehicle and his Uber driver account to drive for Uber, and that Rodrigues‑Pessoa knew Dearaujo was planning to use the insured vehicle to provide Uber transportation services on the day of the collision.
1.3. The Insurance Claim. First Help submitted a timely claim for coverage under the Secured Lenders provision in the Commerce policy. Mr. Rodrigues‑Pessoa never submitted a claim to or otherwise communicated with Commerce about this collision and the damage suffered by his vehicle.
Commerce denied First Help's claim on the ground that it was barred by the Public Conveyance Exclusion in the Policy.
The Ford Fusion was worth $13,250 immediately before the accident. Commerce and First Help agree that the vehicle was a "total loss" because the cost to repair the vehicle would have exceeded the pre‑accident actual cash value of the car.
Rodrigues‑Pessoa owed First Help $16,664.07 as of September 13, 2018, with interest accruing at the rate of $6.96 per day. This suggests that as of October 8, 2017, the day of the collision, First Help had a $14,367.27 security interest in the vehicle.[6]
---------------------------

[5] Commerce and First Help agree that the police report contains "an accurate description of the facts and circumstances of this accident." The parties waived any hearsay, authenticity, or foundation objections to considering the statements in the police report for their truth.
[6] The September 13, 2018, valuation date was 330 days after the October 8, 2017, collision. If interest was accruing at $6.96 per day, then $2,296.80 in interest accrued during that time (330 * $6.96 = $2,296.80), and Rodrigues‑Pessoa owed First Help $14,367.27 as of October 8, 2017 ($16,664.07 ‑ $2,296.80 = $14,367.27).
‑ 4 ‑
As a result, if First Help's claim were not barred by the Public Conveyance Exclusion then Commerce would have to pay $12,750 to First Help. That amount is the net after subtracting the insured's $500 deductible from the cash value of the vehicle. Since First Help's legal interest in the insured vehicle exceeds that amount, and apparently did so on the date of the collision, First Help would be entitled to recover full payment from Commerce if it has a valid claim.
2. Claim against Mr. Rodrigues‑Pessoa. Commerce asserted claims for declaratory judgment against both First Help and Rodrigues‑Pessoa. The Court may resolve the claim against First Help even though it must dismiss the claim against Rodrigues‑Pessoa for lack of timely service of process.
2.1. Dismissal for Lack of Timely Service. The Court cannot adjudicate the claim against Mr. Rodrigues‑Pessoa because Commerce never served him with process in this action. A purported judgment against a party who was never properly served with process would be "no judgment at all, but a nullity." Rogan v. Liberty Mut. Ins. Co., 305 Mass. 186, 188 (1940).
The Court will dismiss the claim against Mr. Rodrigues‑Pessoa without prejudice because Commerce has neither made timely service of process on him nor shown good cause for its failure to serve Rodrigues‑Pessoa.[7] A civil plaintiff is required to serve a summons and copy of the complaint within 90 days after the complaint was filed; failure to do so as to any defendant without good cause will result in dismissal without prejudice as to that defendant. See Mass. R. Civ. P. 4(j). "Good cause is 'a stringent standard requiring diligent albeit unsuccessful effort to complete service within the period prescribed by the rule.'" Commissioner of Revenue v. Carrigan, 45 Mass. App. Ct. 309, 311 (1998), quoting Shuman v. Stanley Works, 30 Mass. App. Ct. 951, 953 (1991) (internal quotation marks omitted).
Commerce filed this action on July 9, 2018. Five months later, Judge Sanders authorized Commerce to serve Rodrigues‑Pessoa at his last and usual home address in California. Almost four more months have now gone by, and Commerce has neither
---------------------------
[7] Commerce says in its trial brief that "Mr. Rodrigues‑Pessoa has not filed an answer or otherwise appeared in this lawsuit," but ignores the fact that RodriguesPessoa has no way to know about this action because Commerce never served him with a summons and a copy of the complaint. 

‑ 5 ‑
filed any proof of service nor demonstrated any good reason for failing to serve Rodrigues‑Pessoa.
The Court will therefore dismiss the declaratory judgment claim against Rodrigues‑Pessoa without prejudice. As a result, Rodrigues‑Pessoa will not be bound by the judgment in this case. See Gulesian v. Richardson, 306 Mass. 184, 186 (1940). 2.2. Not a Necessary Party. The absence of the named insured does not prevent adjudication of the dispute between the other parties. Rodrigues‑Pessoa is not a necessary party in resolving the controversy between Commerce and First Help. The declaratory judgment act only requires the joinder of parties who have an independent "legal interest" that must be decided in order to adjudicate the claim for declaratory relief. Harrison v. Massachusetts Society of Professors/Faculty Staff Union/MTA/NEA, 405 Mass. 56, 60 (1989) (construing G.L. c. 231A, ' 8).
First Help's asserted rights under the Secured Lenders provision of the Policy are separate and distinct from the rights of Rodrigues‑Pessoa. The Secured Lenders provision is a form of a "standard mortgage clause" that may provide a mortgagee or other secured lender with insurance coverage even where the property owner has no right to collect from the insurer. See Gibraltar Financial Corp. v. Lumbermens Mut. Gas. Co., 400 Mass. 870, 871 (1987). An insurance policy with such a provision creates two distinct insurance obligations, one owed by the insurer to the property owner or other named insured, and another owed to the secured lender. See Ideal Fin. Servs., Inc. v. Zichelle, 52 Mass. App. Ct. 50, 57 (2001). A secured lender provision or other standard mortgage clause protects an innocent secured lender against the loss of insurance coverage as a result of acts, default, or neglect by the named insured. Id
In this case, First Help argues that it is entitled to insurance coverage under the Secured Lenders provision even assuming that any claim by Rodrigues‑Pessoa for collision damage coverage would be barred by the Public Conveyance Exclusion.
Mr. Rodrigues‑Pessoa is not a necessary party because the dispute about whether First Help can recover against Commerce may be resolved without deciding or limiting any rights that Rodrigues‑Pessoa may have against Commerce. See Harrison, supra; Benson v. City of Lynn, 359 Mass. 411, 414 (1971).
-6-  

Although Rodrigues‑Pessoa may have some practical or financial interest in the resolution of the actual controversy between Commerce and First HelpCbecause Commerce could try to collect from Rodrigues‑Pessoa, by exercising First Help's rights as a secured lender, if Commerce is compelled to make a collision damage payment to First HelpCthat does not make him a necessary party to the declaratory judgment action against First Help. See Massachusetts Mut. Life Ins. Co. v. Commissioner of Corps. & Taxation, 363 Mass. 685, 689 (1973) (City of Springfield not necessary party to proceeding for declaratory relief as to whether Commissioner of Corporations and Taxation had properly calculated amount of excise tax owed by owner or urban renewal project, even though City had financial interest because tax would be conveyed to it, where City played no role in Commissioner's assessment of tax). "[Wle need not have before the court every person or group who conceivably might ultimately be affected by the outcome of the case" before declaring the rights of two parties under c. 231A. Town of Brookline v. County Comm'rs of the County of Norfolk, 367 Mass. 345, 349 (1975), quoting Town of Sudbury v. Comm'r of Corps & Taxn., 366 Mass. 558, 569 (1974).
3. Claim against First Help Financial.
3.1. No Collateral Estoppel. First Help's assertion that Commerce is barred under the doctrine of issue preclusion or collateral estoppel from denying its claim is unavailing. The prior court ruling relied upon by First Help involved a different issue than this case, and thus has no preclusive effect here.
The doctrine of issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Alicea v. Commonwealth, 466 Mass. 228, 235 (2013), quoting Taylor v. Sturgell, 553 U.S. 880, 892 (2008), quoting in turn New Hampshire v. Maine, 532 U.S. 742, 748‑749 (2001).
"A party is precluded from relitigating an issue where `(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication,' was essential to the earlier judgment, and was actually litigated in the
-7-
prior action." Degiacomo v. City of Quincy, 476 Mass. 38, 42 (2016), quoting Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134 (1998).
First Help bases its issue preclusion argument on a twenty‑year old decision in Commerce Ins. Co. v. Harris, W0CV9600237A, 9 Mass. L. Rptr. 713, 1999 WL 1320339 (Mar. 31, 1999). In that case Judge Hillman, then sitting on the Superior Court, ruled that a finance company could recover for collision damage from Commerce under the Secured Lender provision of the standard Massachusetts automobile insurance policy, even though the named insured's claim was barred by the policy's racing exclusion because he had had crashed his new Porsche Carrera while driving at the Bridgehampton Speedway.
Harris does not control here because the issue decided by Judge Hillman is not identical to the issue in this case. Harris concerned the interplay of the Secured Lender provision and the standard policy racing exclusion. This case concerns the interplay of the same Secured Lender provision with a very different exclusion for use of an insured vehicle to provide services through a transportation network company like Uber. Though First Help insists that Judge Hillman's legal analysis is the same analysis that should govern on this case, the two cases nonetheless involve materially different issues. Issue preclusion does not apply merely because similar facts or legal principles were relevant in a prior case that decided a different issue. See Friedman v. Boston Broadcasters, Inc., 402 Mass. 376, 379 (1988).
3.2. First Help's Right to Recover. This brings us, at long last, to the merits of the dispute between Commerce and First Help.
First Help's loss of its secured interest in the totaled vehicle is covered under the policy's Secured Lenders provision. It is not barred by the Public Conveyance Exclusion, even though the collision occurred while the insured vehicle was being used to transport Uber passengers.
  

The policy provides that a secured lender's right of payment "will not be invalidated" by the named insured's "acts or neglect." The decision by the named insured in this case to let his friend use the vehicle as an Uber driver is an "act" or "neglect" by the named insured that, under the plain meaning of the Secured Lenders provision, cannot invalidate First Help's coverage for collision damage.
-8-
The only exceptions to coverage for a secured lender listed in the policy are where vehicle loss or damage results from conversion, embezzlement, secretion, arson, theft, or "any other means of disposal" committed by or for the named insured. Use of a vehicle to drive Uber passengers does not fall within any of these exceptions.
Since the Secured Lenders provision does not exclude coverage where the named insured allows their vehicle to be used to provide transportation network services through a company like Uber, it gives First Help an enforceable right under the insurance policy to recover for the collision damages in this case.[8] See Gibraltar Financial, 400 Mass. at 872 (secured lender could recover under policy when vehicle was destroyed by arson committed by vehicle owner, because loss due to arson was not among exclusions written into secured lender provision at that time). Commerce's insistence that collision damage incurred while a vehicle is being used to transport Uber passengers is never covered by the policy, even where a secured lender seeks compensation, "would allow the insurer to escape its basic promise" under the Secured Lenders provision "to hold the mortgagee [or other secured lender] harmless from acts of the mortgagor" or other borrower. Id.
In sum, Commerce is bound by the terms of its policy. The Secured Lenders provision was rewritten after Gibraltar Financial to bar secured lenders from recovering for damage incurred as a result of arson by the named insured. It was not similarly revised after the new transportation network company statute took effect to exclude damage incurred while a named insured uses or allows their vehicle to be used to provide transportation network services. Commerce is therefore liable to First Help on the agreed facts of this case.
---------------------------
[8] There is nothing ambiguous about the Secured Lender provision in this regard. Even if there were an ambiguity, however, First Help's reliance on the principle that ambiguities in an insurance policy should be strictly construed against the insurer would be misplaced. "Because the language of the standard [automobile insurance] policy is prescribed by statute and controlled by the Division of Insurance rather than the individual insurer," see G.L. c. 175, ' 113A, "the rule of construction resolving ambiguities in a policy against the insurer is inapplicable." McNeill v. Metropolitan Prop. & Liab. Ins. Co., 420 Mass. 587, 589 (1995), quoting Bilodeau v. Lumbermens Mut. Casualty Co., 392 Mass. 537, 541 (1984). "Instead, [the Court] must ascertain 'the fair meaning of the language used, as applied to the subject matter." Id.
‑ 9 ‑
  

This result is consistent with the Massachusetts statutory framework, enacted in late 2016, that governs transportation network companies. See St. 2016, c. 187. The parties stipulated that Uber is a "Transportation network company" and that at the time of the collision the insured vehicle was being operated by a "Transportation network driver" within the meaning of G.L. c. 159A1/2, ' 1. Transportation network companies must obtain insurance to cover private vehicles used to provide services through their network. See G.L. c. 159A1/2, ' 5; G.L. c. 175, ' 228. And automobile insurers may lawfully "exclude any and all coverage ... for any loss or injury," including for collision damage, "that occurs while a driver is providing transportation network services." G.L. c. 175, ' 228(h). On the other hand, the Legislature made clear that this statute does not "preclude an insurer from providing coverage for the transportation network driver's vehicle if the insurer so chooses to do so by contract or endorsement." Id. Providing coverage to secured lenders for collision damage incurred while a vehicle is being used as part of a transportation network is therefore permitted by and consistent with the statutory scheme. Commerce's insistence that the statutory framework somehow bars First Help's claim is without merit.
ORDER
Final judgment will enter declaring that First Help Financial, LLC, is entitled to recover $12,750 in collision damages from Commerce Insurance Company under the Secured Lenders provision in the standard automobile insurance policy, declaring that First Help's claim is not barred by the policy's "Vehicle Sharing and Public or Livery Conveyance Exclusion" even though the insured vehicle was being used to transport Uber passengers at the time of the collision, and dismissing without prejudice the declaratory judgment claim against Marcio R. Rodriguez‑Pessoa.
@/s/Kenneth W. Salinger Justice of the Superior Court
@April 16, 2019
‑ 10 ‑